102 N.J. Super. 435 (1968)
246 A.2d 138
CAMBRIDGE ACCEPTANCE CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
LEO HOCKSTEIN AND SYLVIA HOCKSTEIN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 20, 1968.
Decided August 19, 1968.
*436 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Herman J. Ziegler argued the cause for appellant.
Mr. Robert Silver argued the cause for respondents (Mr. Martin Simon, attorney).
PER CURIAM.
We refer to the opinion filed in the Chancery Division for the essential facts and background of this litigation. Cambridge Acceptance Corp. v. American National Motor Inns, Inc., 96 N.J. Super. 183 (Ch. Div. 1967). We are in substantial accord with the factual findings therein *437 made, except as qualified hereinafter. We are also in agreement with the judgment entered in favor of the respondents below, but not necessarily for all of the reasons stated in the opinion of the trial judge.
The trial court stated its conception of the issue involved as follows (96 N.J. Super., at p. 200):
"If an owner of lands subordinates his fee title to a mortgage to be given by his lessee, and the instruments of subordination demonstrate an intent that the funds obtained from an obligation secured by such mortgage be used for construction purposes, is the interest of the mortgagee or his assignee in the land superior to that of the owner in the absence of proof that the funds were spent for construction purposes?"
In the course of the opinion that query was answered in the negative (Id., at p. 204). If that conclusion may be read as dependent upon a distinction in principle between the subordination by an owner of his fee interest to the subsequent lien of an incumbrancer dealing with a lessee (the instant situation) and the subordination of the interest of a prior lienor to that of a later one, with the subsequent lien in both cases purported to cover advances for construction on the premises (Id., at pp. 200-201), we see no such distinction. In both instances the holder of a senior interest in land is subordinating to a junior interest in order to gain the added security of an improvement on the land. Policy and equitable considerations in resolving any dispute between the competing interests, arising out of a diversion of construction moneys from the contemplated improvement of the land, seem equally pertinent in both instances.
If the decision below rests on any finding that the documents or negotiations in the case spell out any stipulation, either express or by clear implication, between the owner and First National that the owner's subordination was limited to a lien for such moneys advanced by First National only as should actually be applied to construction of the motel, we disagree with that finding. So far as the documents signed by the Hocksteins are concerned they evidence no *438 more than an intent and expectation on their part that the lessee should promptly build a 52-unit motel on the premises and an undertaking by them to subordinate the lease [sic; conceded to mean, "subordinate the owner's fee"] to any mortgages (up to $5,500 per motel unit) placed by the tenant on the demised premises to obtain part or all of the financing whereby to construct the motel. As much probably can be said of the intention and expectation of almost any subordinator of an interest (lien or otherwise) in land who agrees to subordinate that interest to the lien to be taken by a construction lender  i.e., an expectation and intention that the construction will actually take place by use of the money borrowed.
Yet it is the general view, recognized by respectable authority, that absent an express stipulation between the subordinator and the construction lender conditioning the scope of the subordination, diversion of the construction money by the borrower from its contemplated use will not dislodge the advanced lienor from his bargained-for priority "in the absence of collusion with the mortgagor in diverting the money from its purpose." IV American Law of Property, § 16.106D, p. 218 (1952; A. James Casner, Editor); 1 Jones on Mortgages, § 742, p. 1105 (1928); Note, 42 Yale L.J. 980, 982 (1933); Brooklyn Trust Co. v. Fairfield Gardens, 260 N.Y. 16, 182 N.E. 231 (Ct. App. 1932)[1]; Gill v. Mission Savings & Loan Association, 236 Cal. App.2d 753, 46 Cal. Rptr. 456 (D. Ct. App. 1965); Matthews v. Hinton, 234 Cal. App.2d 736, 44 Cal. Rptr. 692, 697 (D. Ct. App. 1965); Iowa Loan & Trust Co. v. Plewe, 202 Iowa 79, 209 *439 N.W. 399 (Sup. Ct. 1926), commented on in 12 Iowa L. Rev. 201, 203 (1927); Anglo-American Savings & Loan Association v. Campbell, 13 App. D.C. 581, 43 L.R.A. 622 (1898).
Where, however, the construction mortgagee expressly agrees with the subordinator to see to it that the proceeds of his loan will be applied to construction of the improvement he will be held to his agreement and will lose his priority as to any advance not going into the construction. Albert & Kernahan v. Franklin Arms, 104 N.J. Eq. 446 (E. & A. 1929); Joralman v. McPhee, 31 Colo. 26, 71 P. 419 (Sup. Ct. 1903); see Wayne International Building & Loan Association v. Moats, 149 Ind. 123, 48 N.E. 793 (Sup. Ct. 1897).
The trial court regarded the present case as controlled by Albert & Kernahan v. Franklin Arms, supra. (96 N.J. Super., at p. 203). However, we do not read the opinion in that case as authority to the effect that the mere knowledge by a construction mortgagee that a prior lienor has given a subordination for the purpose of enabling the borrower to secure construction moneys to improve the premises operates per se to convert the construction lender into a guarantor to the subordinator that all money advanced on the loan will be applied to construction by the borrower. This may or may not some day be declared to be the law of New Jersey. The case before us does not require a resolution of the question. Albert & Kernahan finds there was an express understanding between the subordinating mortgagee and the construction mortgagee "that the money to be advanced [on the loan] should be appropriated to the payment of expenses incurred in the erection of the apartment house," (104 N.J. Eq., at p. 447), and that the subordination was therefore so limited by agreement. The case has since been so understood. Vanderhoff v. Wasco, 109 N.J. Eq. 463, 467 (Ch. 1932). Note, 42 Yale L.J., op. cit., supra (at p. 983, n. 8).
Notwithstanding all of the foregoing, we nevertheless agree with the holding in the Chancery Division in favor *440 of the owners of the property. While, under general principles of mortgage subordination law outlined above, a construction lender taking the benefit of a subordination is not a guarantor to the subordinator or liable to him for mere negligence in seeing to the appropriation of the moneys to the construction, we think plain principles of equity at least call for such a construction lender to make and administer the loan in the conventional manner of a construction lender rather than mask what is essentially a loan on the general credit and reliability of the borrower and the security of the land value as a construction loan, and act accordingly in disbursing the funds. We are firm in the conclusion, and so find, that the latter is what the First National did here, and in violation of the owner's equitable rights. To the extent that this theory may underlie the decision of the Chancery Division, we are in accord.
Aside from looking at the site, appraising the land, and being satisfied that a necessary variance, building permit, building contract (between corporations in the same proprietorship) and storm drain and access permit were obtained or entered into, First National in fixing the $100,000 limit for the loan and in advancing the funds which it did was totally oblivious of and seemingly disinterested in what the borrower actually did with the money or whether it was applied to the construction of this projected motel. The $100,000 was described by its president as "just an agreed figure," and he admitted he did not know whether the money went into this motel or one of the several others which First National was simultaneously financing for the borrower.[2] There was concededly no intention to advance the money in accordance with "stages of construction," whether site preparation or otherwise. While the president characterized this loan as designed to enable site preparation, *441 he admitted that in fixing $100,000 as the face amount he placed substantial reliance on the appraised value of the land, on which First National was to get a first lien. This supports other cogent evidence that neither lender nor borrower really contemplated that any substantial part of the money advanced was necessarily to go into construction of this particular motel, even if "site preparation" were regarded as construction.
While the trial court found that First National had acted in good faith, we construe this as meaning no more than that it was not conniving with the borrower to defraud the owner of the land. The trial court's general fact-finding is consistent with our conclusion that First National never conceived this loan as, or undertook to administer it in the manner of a conventional construction loan. The Hocksteins were equitably entitled, in all the circumstances, to expect that it would do so, and must have relied on that expectation in executing the subordination. The failure of First National in this regard was probably a factor in the fiasco which ensued, and it should be and is now equitably estopped from asserting the subordination in derogation of the owners' fee interest.
We agree with the trial court that none of the several items of alleged "construction" claimed to have been financed by the moneys advanced by First National was satisfactorily proven so to have been.
Judgment affirmed.
NOTES
[1] This case is probably dictum on the specific proposition asserted (at p. 234). The losing subordinator argued that its expectations were frustrated in that the building loan agreement called for erection of garages along with an apartment house. The garages could not be erected because of zoning restrictions. This was not known to the construction lender until the building was well advanced. But all the lender's advances went into the construction. The court held the construction lender had the right to waive the condition as to the garages in order to safeguard its security, as provided for in the agreement.
[2] It is interesting that the same day this loan was closed and the first $57,500 advanced, two other motel "construction" loans were closed between First National and the borrower, each in the face amount of $100,000, with initial advances of $57,500 ($7,500 being returned as a bonus in each case), just as in the instant transaction.