479 P.2d 393 (1970)
Joseph F. DROBNICK, Plaintiff in Error,
v.
WESTERN FEDERAL SAVINGS AND LOAN ASSOCIATION OF DENVER, Colorado, Defendant in Error.
No. 70-505 (Supreme Court No. 23272.).
Colorado Court of Appeals, Div. I.
December 1, 1970.
As Modified on Denial of Rehearing December 22, 1970.
*395 Edward A. Jersin, Denver, for plaintiff in error.
Bill Earl Tom, Anthony F. Zarlengo, Denver, for defendant in error.
Not Selected for Official Publication.
DUFFORD, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and was subsequently transferred to the Court of Appeals under the authority vested in the Supreme Court.
This case represents the consolidation by the trial court of five separate cases. Three cases were suits initiated by claimants of mechanics' liens. One case was filed by the plaintiff in error, Drobnick, as a suit to adjudicate the standing of all lien rights claimed against the real property in question, and the fifth action was brought by the defendant in error, Western Federal, to secure the appointment of a receiver for such property. The only parties to the consolidated action which are before us on appeal are Drobnick and Western Federal, and both assert error in this appeal.
Drobnick, the plaintiff, was the owner of a 28 acre tract of undeveloped real property. The portion of that property which is significant to this appeal is the area ultimately platted to become Blocks 2, 3, 4 and 5 of Broadridge Plaza Filing No. 2.
All of the questions raised in this appeal relate to the comparative security rights of Drobnick and Western Federal in the land referred to. Drobnick's security rights rest upon a deed of trust which named him as beneficiary and which was executed by the land purchaser as security in the nature of a purchase-money mortgage. Drobnick also was the assignee under an assignment of rents given in connection with his deed of trust. Western Federal's security consists of two separate deeds of trust and accompanying assignments of rents describing the property involved, and we shall refer to these as the Western Federal security. The deeds of trust were executed as security for loans made by Western Federal to the purchaser of this property for the purpose of providing construction and permanent financing for improvements which it was contemplated would be constructed upon the subject property.
It is uncontroverted that Drobnick's deed of trust and his collateral assignment of rents, which we will refer to cumulatively as the Drobnick security, were executed and recorded prior to the execution and recording of the deeds of trust and accompanying assignments of rents given to Western Federal. Under the law of this jurisdiction, the Drobnick security constituted, in the first instance, the first and prior encumbrance as to all of the subject property. Eastwood v. Shedd, 166 Colo. 136, 442 P.2d 423. If the Drobnick security is to occupy a position of priority which is secondary to that of the Western Federal security, it must occur as the result of a valid subordination of position. Collins v. Home Savings and Loan Assn., 205 Cal. App.2d 86, 22 Cal.Rptr. 817.
In determining whether in the following described instances of alleged subordination a valid subordination of the Drobnick security did, in fact, occur, we can look solely to the various written agreements which bear upon this matter. In this case the significant contracts are clear, and neither party asserts that they contain any ambiguities. That being the case, their language will be controlling and will not be varied by the application of those rules of judicial construction which relate to ambiguous agreements. Bedford v. Colorado Fuel and Iron Corp., 102 Colo. 538, 81 P.2d 752.
The documents which are of significance consist, first of all, of an agreement dated *396 May 19, 1961, titled "Receipt and Option," under the terms of which Drobnick agreed to sell the subject property and also agreed generally to subordinate his deed of trust and assignment of rents to the lien of other deeds of trust and assignment of rents which might be made for the purpose of securing funds to construct improvements on the described lands, or for the purpose of providing what is commonly known as "permanent financing" with respect to such improvements. The remaining pertinent documents consist of five separate subordination agreements, under the terms of which the Drobnick security was subordinated to contemplated security rights. We shall discuss the effect of these various legal agreements in connection with the specific points of error which have been raised by the parties.

I.
Drobnick's first contention of error is that the trial court was incorrect in ruling that the Western Federal security constituted a first encumbrance as to 2.549 acres within Lot 2 of Block 5. In making its determination in regard to priority on this land, the trial court did so on the basis that Western Federal's rights in such acreage were dominant because of the effect of a subordination agreement dated October 22, 1962, executed by Drobnick in contemplation of a construction loan in the amount of $1,142,000 and a permanent financing loan in the amount of $1,500,000, which loans were to be made by Majestic Savings and Loan Association of Denver, Colorado. From the record, it appears that such lender did, in fact, advance certain funds under the loans contemplated by this agreement, and that it at one time held a deed of trust covering, together with other lands, the 2.549 acres within Lot 2 of Block 5. However, there is no evidence that as to such property any rights under this agreement were ever transferred to Western Federal in support of its security position. To the contrary, the evidence establishes that, following the execution of this subordination agreement, there was a complete replatting of all of the lands initially owned by Drobnick. After this, new financing arrangements were made in which Western Federal assumed the role of principal lender. We, therefore, rule that Western Federal did not have and cannot now claim any rights by virtue of the execution of this particular subordination agreement; and the judgment of the trial court holding that the Western Federal security was the first lien against the 2.549 acres within Lot 2 of Block 5 is hereby reversed.

II.
Under the provisions of two separate subordination agreements dated August 15, 1963, and a third subordination agreement dated January 6, 1964, Drobnick subordinated his security to the Western Federal security as to that land consisting of all of Blocks 2, 3 and 4 and Lot 1 of Block 5.
In this appeal it is Drobnick's position that not all of the funds which were disbursed by Western Federal under the loans for which the Western Federal security on this property was taken were applied to improvements on such property. In the instance of Block 4, no improvements at all were constructed, and this property remains in its unimproved condition. Application of the rule advanced by Drobnick would mean in the instance of Blocks 2 and 3 and Lot 1 of Block 5 that the Western Federal security would be dominant only to the extent that it could be proved that funds disbursed under its secured loans were actually expended for improvements on these parcels. In the instance of Block 4, application of the principle advanced by Drobnick would mean that Western Federal did not have a first security position of any kind.
In our opinion, the contention made by Drobnick has no application in the instant case, and we reject it. While we agree that generally in instances where a vendor's security is subordinated to a subsequent loan it is done so on the premise that the property involved will enjoy an increase *397 in value because of the construction of improvements paid for by the subsequent loan proceeds (See Collins v. Home Savings and Loan Assn., supra.), such anticipated occurrence was not made a condition by Drobnick when he subordinated his security on the property involved. The only express conditions contained in the subordination agreements of August 15, 1963, and January 6, 1964, were that loans in amounts not to exceed $750,000 and $575,000 were to be made by Western Federal to the then owner of the real property involved with certain conditions as to interest and loan-term. There is no contention that these conditions were not, in fact, satisfied by Western Federal, nor is there any contention made as to a collusion between Western Federal and the borrower to divert the loan funds from their intended purpose. Such being the case, the general rule governing this question becomes applicable. Our research has revealed that rule to be well stated and well documented in the decision of Cambridge Acceptance Corp. v. Hockstein, 102 N.J.Super. 435, 246 A.2d 138. It is as follows:
"Yet it is the general view, recognized by respectable authority, that absent an express stipulation between the subordinator and the construction lender conditioning the scope of the subordination, diversion of the construction money by the borrower from its contemplated use will not dislodge the advanced lienor from his bargained-for priority `in the absence of collusion with the mortgagor in diverting the money from its purpose.' [Citing authorities]"
The decisions of our Colorado Supreme Court in the cases of Joralman v. McPhee, 31 Colo. 26, 71 P. 419, and Colorado National Bank v. F. E. Biegert Co., 165 Colo. 78, 438 P.2d 506, have no application in this case. In each of those cases the facts were that express conditions imposed by the holders of the subordinated security had been breached, and hence their act of subordination became limited in its effect.
The order of the trial court holds that the Western Federal security is a first lien as to Blocks 2 and 3, and this is affirmed. Such order further holds, without any subsequent challenge by Drobnick, Western Federal to be the owner of Block 4 and Lot 1 of Block 5, apparently by reason of the foreclosure of its security rights against such property through the offices of the Public Trustee. Such judgment is also affirmed.

III.
In its cross-appeal Western Federal has asserted that the trial court improperly held that the Western Federal security did not represent the first and prior lien as to all of Lot 2 of Block 5. As to this tract, the Drobnick security was subordinated by a subordination agreement dated August 28, 1963. It is uncontroverted that Drobnick himself did not execute this document, and that his signature as it appears on the instrument was a forgery placed there by the owner of the real property. Nonetheless, Western Federal contends that, by virtue of the general covenant to subordinate contained in the "Receipt and Option" of May 19, 1961, Drobnick, having cloaked another with the power to borrow, is estopped to deny the legal effect of this subordination agreement.
In our opinion the terms of the general covenant to subordinate which was contained in the May 19, 1961 agreement compels exactly the opposite conclusion. The language of the agreement specifically reserves the power to subordinate to Drobnick alone. This case does not present a situation in any way similar to the factual situation dealt with in Londner v. Perlman, 129 App.Div. 93, 113 N.Y.S. 420, cited by Western Federal in support of its position.
The finding of the trial court that the subordination agreement of August 28, 1963, was a nullity is correct, as is its finding that the Drobnick security constituted a first and prior lien as to all of Lot 2 of Block 5. Its judgment of foreclosure based upon *398 these findings, and which was entered in favor of Drobnick, is hereby affirmed, except insofar as there is excluded from such judgment the 2.549 acre portion of said Lot which the trial court erroneously excluded. For the reasons previously stated in this opinion, such 2.549 acre portion should be included within the foreclosure judgment entered in favor of Drobnick.

IV.
Drobnick has asserted in this appeal that he was entitled to the enjoyment of all rents and profits which were collected by the receivers appointed for the property involved in this action. His position in this regard is based upon the fact that he did not expressly subordinate his separate rent assignment document. His position is not sustained by the legal effect of the documents under examination here. In each of the subordination agreements which he executed in contemplation of the Western Federal security Drobnick expressly subordinated the lien of his deed of trust to a deed of trust to be executed in favor of Western Federal. The deed of trust documents which were thereafter executed in favor of Western Federal contained within their own terms an express assignment of future rents, profits, income and benefits accruing to the property included in the deed of trust. We hold that the legal effect of the subordination agreements which Drobnick executed was to subordinate the Drobnick security, including his rights to rents and profits, to all of the terms of the deeds of trust given to Western Federal, and this included the provisions therein which gave Western Federal the right to receive rents and profits accruing after default.

V.
The final assertion of error which is submitted in this case is Drobnick's assertion that the trial court erred by not protecting Drobnick's junior security rights, principally his rights of redemption as to those tracts in which the Western Federal security was held to be paramount.
Drobnick's motion for new trial and its supporting memorandum do not assert any error on the part of the trial court relating to a failure to protect the junior security rights of Drobnick. This omission is fully determinative as to this point of alleged error since the only questions which can be considered on review are those which are dealt with in some degree of specificity in the motion for new trial. R.C.P.Colo. 59(f); Martin v. Opdyke Agency, Inc., 156 Colo. 316, 398 P.2d 971.
Upon the terms set forth above in this opinion, the judgment of the trial court is affirmed in part, reversed in part, and this cause is remanded to the trial court for further proceedings consistent with the terms of this opinion.
SILVERSTEIN, C. J., and COYTE, J., concur.