MIRIAM E. KENNEDY *v.* DAVID E. BETTS AND
MILTON F. CLOGG, SUBSTITUTE TRUSTEES

[No. 65, September Term, 1976.]

*Decided October 7, 1976.*

The cause was argued before GILBERT, C. J., and MORTON and LOWE, JJ.

*William L. Haugh, Jr.,* and *W. Jerome Offutt* for appellant.

*David E. Betts* and *Kevin M. O'Connell,* with whom were *Betts, Clogg & Murdock* on the brief, for appellees.

GILBERT, C. J., delivered the opinion of the Court.

In this appeal, we are asked by appellant, Miriam E. Kennedy, to reverse a holding by Judge Robert E. Clapp in

the Circuit Court for Frederick County. Specifically, the appellant seeks to have us decide that a first deed of trust, for her benefit, was not subordinated to a second deed of trust, notwithstanding a subordination agreement executed, with express authority, by the trustees named in the Kennedy, or first, deed of trust.

The appellant sold 20.51 acres of land in April, 1968, to four individuals, and she received a "Deferred Purchase Money Deed or Trust" and a note in the amount of $243,000, which sum represented the unpaid portion of the purchase price. Of significance to this case is the language embodied in the Deed of Trust that provided:

> ". . . [T]he trustees, without the necessity of obtaining the prior consent of the Deed of Trust Note holder, shall enter into an Agreement subordinating this Deed of Trust to any and all bona fide construction and/or permanent loan placed upon the herein described premises or any portion or portions thereof . . ."

Five years later the grantors of the Deed of Trust conveyed the Kennedy tract to GSL Associates, Inc.[1] which in turn, through its corporate president, executed a Deed of Trust in the amount of $2,792,250 inuring to the benefit of Capital Mortgage Investments. The trustees named in the Kennedy Deed of Trust, pursuant to the authority conferred upon them by that document, entered into a "Subordination Agreement" on July 2, 1973. The agreement provided in pertinent part:

> ". . . [T]he said parties of the first part [the trustees for Kennedy] and the parties of the second part [the trustees for Capital Mortgage Investments] in consideration of the sum of One Dollar and other valuable consideration, agree that

---

1. We infer from the record that the first letter of the last name of each of the four original purchasers was used to comprise the name. The four purchasers were: Richard A. Gildar, Paul M. Sachs, Michael Schrier, and Gerald S. Lilienfield. We further infer that the "S" stands both for Sachs and Schrier.

> the lien of said [Kennedy or first] Deed of Trust . . . shall be subordinate to the lien of said [second or Capital] Deed of Trust . . . , and any and all future advances made thereunder. Said first mentioned [or Kennedy] Deed of Trust other than as hereby subordinated, to remain in full force and effect."

Default having occurred under the terms of the second or Capital Deed of Trust, the appellees, in their capacity as substituted trustees of the second or Capital Deed of Trust, instituted foreclosure proceedings on April 4, 1975, in the Circuit Court for Frederick County against the property. A public auction sale was held June 23, 1975, and Capital "bought-in" the land at a price of $2,063,000. At that time, forty-two (42) townhouses in various stages of completion were under construction on the encumbered land. After deducting expenses of sale, there was a deficiency of $429,366.54. The sale was ratified by the court on July 21, 1976, and the matter was referred to an auditor.

While the account was pending before the auditor, Kennedy filed a claim in the proceeding for payment of the balance due her under the first Deed of Trust. The auditor, however, in stating his account, disallowed the Kennedy claim on the basis of the subordination agreement of July 2, 1973.

Appellant excepted to the auditor's report, and the issue was heard before the court. The hearing judge reasoned that the trustees, under the Kennedy or first Deed of Trust, by signing the subordination agreement, were ". . . merely carrying out what Mrs. Kennedy agreed to as part of the consideration as supplied by the purchaser at the time her transaction was entered into with them," and confirmed the auditor's report.

Appellant, acknowledging, as she must, that no testimony or evidence was offered in the hearing court, nevertheless asserts that "[s]he was led to believe that her first lien would be fully protected even though the purchaser or its successors were to obtain a superior record title because the

funds obtained by the purchaser would be used solely for construction and/or permanent loan purposes." [2] Who led applicant to so believe, and how it was accomplished, is not revealed by the record. Furthermore, there is no showing as to the extent that the monies obtained under the Capital or second Deed of Trust were utilized for construction or permanent loans.

Because the Kennedy Deed of Trust recites that her trustees were authorized to subordinate her Deed of Trust "to any and all bona fide construction and/or permanent loan[s]," and the record does not reflect to "what extent" the Capital loan was so used, Kennedy argues that we should reverse and remand the matter for further proceedings, thus affording her an opportunity to inquire into the manner in which the Capital loan was utilized.

Appellant here submits that we should follow three New Jersey cases, *viz.*, *Cambridge Acceptance Corp. v. Hockstein*, 102 N.J. Super. 435, 246 A. 2d 138 (1968); *Cambridge Acceptance Corp. v. American National Motor Inns*, 96 N.J. Super. 183, 232 A. 2d 692 (1967); and, *Albert & Kernahan, Inc. v. Franklin Arms, Inc.*, 104 N.J. Eq. 446, 146 A. 213 (E. & A. 1929), which held that only the money actually used for the purpose agreed upon in the subordination agreement was entitled to priority.[3] Our review of those cases convinces us that they are inapposite.

*Cambridge Acceptance Corp. v. American National*, *supra*, involved a subordination agreement which recited that it was for the purpose of securing a "construction loan." In the case *sub judice*, no such language appears in the subordination agreement, although similar phraseology is present in the Kennedy or first Deed of Trust by way of limitation on the powers of the trustees. Moreover, no

---

2. As aptly stated by Justice Ward Hunt, "[i]t will not do for a man to enter into a contract and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written." Upton v. Tribilcock, 91 U. S. (1 Otto) 45, 50; 23 L. Ed. 203, 205 (1875).

3. Similar holdings are found in Drobnick v. Western Fed. Sav. & Loan Ass'n. of Denver, 479 P. 2d 393 (Colo. App. 1970); G. Credit Company v. Mid-West Land Development, Inc., 207 Kan. 325, 485 P. 2d 205 (1971).

money for construction was ever advanced in *American National* nor was construction ever commenced. Although in that case $90,500 was expended, including $10,500 in "bonus money," the appellate court inferred that $80,000 was consumed in obtaining a variance. We deduce from the record in the matter before us that the forty-two (42) townhouses, in various states of completion, were so constructed with monies advanced by Capital.

*Cambridge Acceptance Corp. v. Hockstein, supra,* turned on the failure of the construction mortgagee to see to the application of the mortgage money even though he had expressly agreed to so do, so that the court invoked equitable estoppel. No such equitable principle is applicable here. The subordination agreement does not contain an express agreement by Capital to oversee the application of the construction loan. In fact, the agreement itself is silent as to any restrictions on the use of the construction loan funds.

*Albert & Kernahan, Inc. v. Franklin Arms, Inc., supra,* was concerned with a written agreement that the owner of the first mortgage would subordinate his interest to the extent of the amount expended by a second mortgagee for the creation of an apartment building. The proof showed that some $44,700 was used to pay contractors. The further sum of $55,485, secured by the second mortgage, was not used in or intended to be used in the construction of the apartment building. In light of the proof, the court limited the effect of the subordination agreement to the money actually used in the construction. At the expense of repetition, we observe that no such proof is present in the case with which we are presently confronted.

The general rule is that where there is an agreement subordinating a first lien to a subsequent lien [4] for purposes of a construction loan, in the absence of an express covenant from the subsequent lienor to the prior lienor to see to the application of the sums advanced, the diversion of funds on

---

4. The subordination agreement does not affect intervening lien holders unless they are a party thereto. W.J. Grange, *Real Estate, A Practical Guide to Ownership, Transfer, Mortgaging, and Leasing of Real Property* 159 (1937).

the part of the mortgagor is a risk run by the prior lienor unless he is able to demonstrate collusion between the mortgagor and the subsequent lienor. *Gill v. Mission Savings & Loan Association,* 236 Cal.App.2d 753, 46 Cal. Rptr. 456 (D. Ct. App. 1965); *Iowa Loan and Trust Co. v. Plewe,* 202 Iowa 79, 209 N. W. 399 (1926), *commented on in* 12 Iowa L. Rev. 201, 203 (1927); *Cambridge Acceptance Corp. v. Hockstein, supra;* IV *American Law of Property* § 16.106 D (A. Casner ed. 1952); L. Jones, *A Treatise on the Law of Mortgages of Real Property* § 742 (8th ed. 1928); Note, 42 Yale L. J. 980, 982 (1933).

Capital did not promise, in the instant case, to see to the application of the sums it advanced. Even if we were to assume *arguendo* that the subordination agreement did somehow subject Capital to policing its monetary advances to the borrower, the proof of the amount expended by the borrower for other purposes is utterly lacking. In our view, when a party who has subordinated his lien for some express purpose to a subsequent lienor seeks to avoid the effect of the subordination agreement on the ground that the purpose of the agreement has been frustrated by the subsequent lienor, it is incumbent upon the prior lienor to prove the *allegata.* He may not simply assert the contention and thereby shift to the subsequent lienor the burden of disproving the averment.

We think the record amply demonstrates that the case now before us falls within the ambit of the general rule inasmuch as collusion is not present, and that Judge Clapp properly overruled the appellant's exceptions to the auditor's report. That the appellant did not obtain the contemplated value for her property is no reason to abrogate the subordination agreement so as to restore appellant to the priority position that she bargained away.

*Order affirmed.*
*Costs to be paid by appellant.*