## Richmond

# TUSCARORA, INC. V. B.V.A. CREDIT CORPORATION ET AL.

March 3, 1978.

Record No. 761467.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*James H. Simmonds* for appellant.

*J. Waverly Pulley, III; John H. Rust, Jr. (T.S. Ellis, III; John Y. Merrell, Jr.; Stephen M. Pratt; Henry A. Schutz, III; Hunton & Williams; Rust, Rust & Pratt, on briefs),* for appellees.

No brief for Jeffrey Sneider and Company, Inc., and Virginia National Bank, appellees.

COCHRAN, J., delivered the opinion of the Court.

In this appeal the question is whether Tuscarora, Inc. (Tuscarora), the complainant in the court below, in its original and its amended bill of complaint, in which it sought to establish the priority of a purchase-money deed of trust, failed to state a cause of action.

On April 18, 1975, Tuscarora filed its original bill of complaint against Jeffrey Sneider & Co., Inc. (Sneider), B.V.A. Credit Corporation (BVA), and Virginia National Bank (which is not a party to this appeal, and asserts no rights to be considered herein), alleging that by deed dated October 13, 1972, Tuscarora conveyed to Sneider twelve lots in a Loudoun County subdivision, taking a note made by Sneider in the amount of $87,750 for part of the purchase money, secured by a deed of trust of the same date conveying eight of the lots to Frank S. Embrey and Vincent Tramonte, Trustees, none of the principal of said note having been paid, and the interest being in default; that by deed of trust dated November 17, 1972, Sneider conveyed all twelve lots to Wiegmann and Runkle, Trustees, to secure construction loans of $36,050 on each lot, or a total of $432,600, made by Commonwealth Mortgage Company, now BVA; and that by deed of subordination dated November 27, 1972, Embrey and Tramonte, Trustees, subordinated Tuscarora's first deed of trust to the lien of the deed of trust securing the $432,600 loan which was referred to in the subordination deed as a "construction loan".

The bill further alleged that BVA claimed to have advanced $92,000 of said construction loan on the eight notes secured by the eight lots covered by Tuscarora's deferred purchase-money trust, although there has been no construction on any of the lots; and that by deed of subordination dated April 6, 1973, Embrey

and Tramonte, Trustees, subordinated Tuscarora's deed of trust to an additional deed of trust to Wiegmann and Runkle, Trustees, securing a note of $120,000 payable to Commonwealth Mortgage Company (BVA), but no money had been advanced under this deed of trust. Copies of the deeds of trust and deeds of subordination were attached to the bill of complaint as exhibits.

The purchase money deed of trust, which provided that each Trustee "shall be clothed with full power to act when action under said deed of trust is required", contained the following provision for subordination:

"IT IS UNDERSTOOD AND AGREED between the parties hereto, that the trustees, without the necessity of obtaining the prior consent or joinder of the noteholder thereof, to subordinate the lien of this deed of trust to the lien of any bona fide land loan, first trust construction and/or permanent loan or loans placed from time to time, upon the described property, or any portion thereof, without curtailment and at no cost to the maker thereof.

"If subordination is to construction loans only, and if the same note and trust secure both the construction and the permanent loan, this deferred purchase money trust and said note secured hereby shall be paid in full concurrently, with the purchase of the construction loan by the permanent lender."

The deed of subordination dated November 29, 1972, contained a first clause referring to the purchase-money deed of trust, a second clause reciting the terms of the provision in the deed of trust authorizing subordination by action of the trustees, and the following:

"WHEREAS, by a certain deed of trust dated November 17, 1972, and recorded immediately prior hereto . . . Jeffrey Sneider and Company, Inc., did convey [the specified 12 lots] in trust . . . to secure . . . payment of twelve (12) notes, aggregating the total principal sum of $432,600.00 and interest, representing a construction loan.

"NOW THEREFORE . . . the said parties of the first part do hereby subordinate the lien of the deed of trust . . . to the lien of the deed of trust dated November 17, 1972, and recorded immediately prior hereto . . . securing payment of twelve (12) notes, aggregating a total principal sum of $432,600.00."

The second deed of subordination, dated April 6, 1973, followed the same format except that it omitted the words "representing a construction loan" in the third clause describing the deed of trust to be given priority.

The bill also alleged that, although BVA contended that the deed of trust of November 17, 1972, secured what was both a construction and a land acquisition loan, the $92,000 advanced to Sneider by BVA was not a bona fide construction loan because none of the money was used for construction on the eight lots, that it was not a bona fide land or land acquisition loan because the $92,000 was not used for acquisition of or payment for the eight lots, and that Tuscarora's deed of trust was superior to the deeds of trust securing BVA. Tuscarora further asserted that the subordinations were made upon the implied condition that any funds advanced under BVA's deeds of trust would be applied to construction on the property or to land acquisition costs. Tuscarora finally alleged that BVA owed a duty, which it breached, to see that moneys advanced under its deeds of trust were used for construction on the land or for payment on account of the purchase price.

Tuscarora asked that the court determine the amounts due and the priorities of the several deeds of trust, giving priority to Tuscarora's deed of trust and, pending such determination, that BVA be enjoined from foreclosing its deeds of trust.

Demurrers were filed by BVA and by Wiegmann and Runkle, Trustees, who had been permitted to intervene over the objection of Tuscarora, on the grounds that Tuscarora was estopped to deny the acts of its agents, the trustees, in subordinating its lien, that BVA and its trustees were entitled as a matter of law to rely upon the subordination deeds, and that as a matter of law there were no implied conditions or duties imposed upon BVA.

The chancellor filed a letter opinion sustaining the demurrers. He rejected the theory of conditional subordination, and ruled that Tuscarora had "abdicated control" of its lien by giving its trustees authority to subordinate without the consent or joinder of the noteholder, that the reference in the second clause of the deed of subordination to "any bona fide land loan, first trust construction and/or permanent loan or loans ..." [1] was a

---

[1] The opinion did not refer to the phrase "representing a construction loan" in the third clause of the first deed of subordination, upon which Tuscarora strongly relied.

recitation only, whereas the language of subordination was unqualified, and that, as Tuscarora did not aver any agreement between itself and BVA, the court could not imply conditions. A decree sustaining the demurrers and giving Tuscarora 21 days to file additional pleadings was entered on January 12, 1976.

Tuscarora filed an amended bill of complaint alleging that the purchase price for the twelve lots was $138,600, of which $87,500 was secured by the purchase-money deed of trust; that upon recordation of its deed of trust dated November 17, 1972, BVA disbursed the sum of $138,600, knowing that the money would not be used for construction purposes; and that BVA now claims a balance due of $92,400 secured by this deed of trust.[2] Tuscarora further alleged in its amended bill that BVA, through its officers, agents and attorneys, acting in the course of their employment, "falsely and fraudulently" represented to Frank S. Embrey, one of the trustees, that the BVA deed of trust was for a "construction loan"; and that Embrey, unaware that money had already been advanced for other than construction purposes, and relying upon the representation that the BVA deed of trust was solely for construction, executed the deed of subordination, which he would not have done had he known the true facts.

The amended bill alleged that if Embrey or Tuscarora had known that BVA intended that part of its loan would be used for land acquisition, they would have required that a proportionate amount (approximately two-thirds) be applied to the purchase price before subordinating or releasing the purchase-money deed of trust, and that neither Tuscarora nor Embrey was aware that BVA had advanced any money against the lots until 1975. The amended bill further alleged that repayments of $184,200 were made to BVA but that BVA sought to charge the entire balance due, $92,400, against the eight lots that were subject to BVA's deeds of trust and to Tuscarora's purchase-money deed of trust, and that BVA had released its deeds of trust as to the other four lots.

Demurrers to the amended bill were filed by BVA and the trustees under its deeds of trust. After a hearing, the chancellor

---

[2] Based upon the allegations of the amended bill, it is apparent that BVA advanced to Sneider the sum of $11,550, the exact amount of the purchase price, for each of the twelve lots acquired from Tuscarora, or the aggregate amount of $92,400 for the eight lots securing the deferred purchase money payable to Tuscarora.

advised counsel by letter that the demurrers would be sustained and that, unless counsel for Tuscarora could represent that he could plead allegations of fraud, other than the deed of subordination upon which he had "wholly relied" in oral argument, the decree sustaining the demurrers would be final. In a decree entered on August 30, 1976, dismissing the cause with prejudice, it was stated that the following allegations proffered by counsel for Tuscarora to be included in a proposed second amended bill of complaint were also insufficient to state a cause of action:

> "The complainant is informed and believes and therefore alleges that BVA, with full knov ledge that Tramonte, Kohlhaas and Garnier were represen· ng Jeffrey Sneider and Company in many real estate tra1 sactions, including the purchase of the subject property from the complainant, nevertheless employed said firm to 1andle all the legal work involved in making the deed of tr 1st loans to the Sneider Company, which included the examination of title, preparation and/or execution of all documents (deeds of trust, loan agreements, subordinations, guarantees, financing statements), obtaining title binders and insurance, and the disbursement of the initial draw of $138,600. Yet, knowing of this dual representation, BVA disbursed what it termed the 'land acquisition' draw to said law firm without any instructions o[r] requirement that the said sum be applied to the payment of any balance due for the subject land, although BVA had constructive and actual knowledge of this obligation. Such conduct of BVA constituted collusion with the borrower, the direct result of which was to deprive the complainant of the priority of its purchase money trust without any payment thereon."

A final decree entered on September 3, 1976, expressly denied the motion of Tuscarora for leave to file its second amended bill of complaint.

Tuscarora argues, in support of its original bill of complaint, that the first subordination deed was invalid because it failed to comply with the subordination authorization provided in the purchase-money deed of trust. We look to the language used by the parties to determine the terms and conditions under which subordination was authorized.

■ By its express terms, the purchase-money deed of trust authorized the trustees, or either of them, to subordinate without the consent or joinder of the noteholder. Therefore, Tuscarora's approval was not a prerequisite to subordination of the deed of trust to any bona fide land loan,[3] construction loan, or permanent loan.

The third clause in the preamble of the subordination deed referred to the indebtedness secured by the deed of trust of November 17, 1972, as a construction loan. But the language of subordination will not be invalidated by the characterization of the new loan as a construction loan, when most of the loan proceeds ultimately would be used for construction purposes,[4] provided no part of the loan was made for a purpose unauthorized under the purchase-money deed of trust. We construe the phrase "representing a construction loan" as descriptive of the major purpose of the loan, and showing eligibility for priority. A more accurate reference perhaps would have described the new loan as a land and construction loan. Under the circumstances, however, we hold that the limited descriptive phrase must give way to the unlimited language of subordination. *See Globe Company v. Bank of Boston*, 205 Va. 841, 140 S.E.2d 629 (1965); *Fundel, Inc. v. First of Denver Mortgage Investors*, 522 S.W.2d 721 (Tex. Civ. App. 1975).

■ Tuscarora insists that the BVA advance to Sneider was not a construction loan because it was never intended to be used for construction, and that it was not a land acquisition loan because it was not applied on the purchase price. But the mere fact that the loan proceeds were not applied on Tuscarora's deferred purchase money does not prevent the advance from being a bona fide land acquisition loan. The amount of the advance by BVA was the amount of the selling price for the eight lots. We attach no significance to the fact that a bank, under Code § 6.1-63, could not have made a loan, as BVA did, of 100% of the value of the lots; there is no allegation that BVA is a

---

[3] In oral argument counsel for Tuscarora and counsel for BVA agreed that "land loan" means a loan for the acquisition of the land that is subject to the purchase-money deed of trust.

[4] The deed of trust contained provisions relating to proposed construction and incorporated by reference an unrecorded Construction Loan Agreement. Although copies of this Agreement were filed with the answers of BVA, reference to the Agreement was not made in the original or amended bill of complaint, and we will not consider it in evaluating the demurrers.

bank or that it is subject to the loan limitations of a bank. If the advance was a land loan then it was subject to subordination unless there was some restriction or condition imposed upon BVA to prevent it.

■ Tuscarora's argument that the subordinations were made upon the implied condition that any funds advanced under the BVA deeds of trust would be applied either to construction or to land acquisition and that BVA had a duty to see that the proceeds of the loan were so applied is untenable. Although we have not heretofore passed upon this question, the general rule, which we approve, is that, in the absence of an express agreement by the subsequent lienor to see to the application of funds advanced, the diversion of such funds is a risk assumed by the prior lienor, unless collusion between the debtor and the subsequent lienor can be established. *Kennedy* v. *Betts,* 33 Md. App. 258, 364 A.2d 74 (1976); *Drobnick* v. *Western Fed. Sav. & L. Ass'n of Denver,* 479 P.2d 393 (Colo. App. 1970); *Cambridge Acceptance Corp.* v. *Hockstein,* 102 N.J. Super. 435, 246 A.2d 138 (1968). Here there was no express agreement by BVA. We reject the reasoning of the California courts which have approved the principle of implied conditional subordination. *See Middlebrook-Anderson Co.* v. *Southwest Savings and Loan Association,* 18 Cal. App.3d 1023, 96 Cal. Rptr. 338 (4th Dist. 1971). The question of collusion will be resolved in our consideration of Tuscarora's amended bill of complaint and its motion for leave to file a second bill of complaint.

■ We acknowledge the validity of Tuscarora's argument that ordinarily a lienor agrees to subordination to permit improvements to be made on property only if he retains an equal security position either by increased value or by receiving payment on the purchase price. Nevertheless, we cannot make a more equitable agreement for one who has voluntarily contracted to his detriment. Here, Tuscarora agreed to the subordination of its lien, without curtail, to a land acquisition loan. The deferred purchase-money note for $87,750, made by Sneider and secured by the purchase-money deed of trust, was dated October 13, 1972, and was payable to the order of Tuscarora on or before 36 months from date, with 8% interest payable semi-annually, and with the right of prepayment in whole or in part after the calendar year of settlement. Thus, under the terms to which Tuscarora agreed, Tuscarora could not

have required Sneider to apply all or any part of the proceeds of a loan obtained for land acquisition purposes until October 13, 1975, unless a permanent lender purchased the construction loan prior thereto. With this exception, the option to prepay was Sneider's. The conclusion is inescapable, as counsel for the trustees argued, that subordination of a purchase-money deed of trust, without a requirement of curtail, to a land acquisition advance, means that the borrower will receive money upon which there is no present restriction as to use. BVA was entitled to require subordination of the purchase-money deed of trust to a land loan made to Sneider in the absence of fraud or collusion between Sneider and BVA. So we hold, as the chancellor ruled, that the original bill of complaint failed to state a cause of action.

In its amended bill of complaint, Tuscarora alleged actual or constructive fraud on the part of BVA in making an advance which it knew would not be used for construction purposes, in representing to Embrey, one of the trustees, that the loan to be accorded priority was a construction loan, and in not advising Embrey that the advance would not be used to pay for the land. But these allegations lack the specificity required to make out a case of fraud. The identities of the agents, officers, and employees of BVA who are alleged to have perpetrated the fraud are not revealed, or the details of the time and place where the fraudulent acts occurred. The allegations are too vague, indefinite, and conclusory to state a cause of action. *See Koch* v. *Realty Corporation,* 205 Va. 65, 135 S.E.2d 131 (1964); *Lloyd* v. *Smith,* 150 Va. 132, 142 S.E. 363 (1928). The proffered allegations of collusion between BVA and Sneider to be included in a proposed second amended bill of complaint are subject to the same infirmity.

The allegation of fraud appears to rest entirely on the phrase "representing a construction loan" in the preamble to the first subordination deed. As we have already held, however, Embrey was not entitled to rely on this phrase in the face of the unqualified language of subordination set forth in the deed. Moreover, if Embrey had been informed that the advance would be made not for construction purposes but for land acquisition, he could not have prevented the subordination for that purpose. Sneider was not required to pay his purchase-money obligation until its maturity, or until the permanent lender purchased the

construction loan, and Tuscarora had agreed to subordinate for specified purposes without requiring any curtail. Refusal by Embrey to execute the deed of subordination would not have defeated subordination, for Tramonte, the other trustee, could have executed the instrument alone. There is no allegation that Tramonte was deluded or defrauded, or that he did not fully understand and approve the purport of the obligations secured by BVA's deeds of trust. Indeed, in the allegations proffered by Tuscarora to be included in a proposed second amended bill of complaint, it is stated that Tramonte's law firm prepared all the legal documents and received the advance of $138,600 made by BVA. Therefore, assuming that Embrey misunderstood or misconstrued the effect of the subordination, such misunderstanding, even if it resulted from misrepresentation or fraud, would not entitle Tuscarora to relief, for the fraud would not be material.

In oral argument, counsel for Tuscarora advanced for the first time the contention that the rights of BVA, as third-party beneficiary of the contract between Tuscarora and Sneider under Code § 55-22, could rise no higher than the rights of Sneider. Tuscarora insisted that Sneider acted fraudulently in not using the money advanced to him to pay the deferred purchase money, and in thus misapplying the funds. But, as we have pointed out, Sneider had no contractual obligation to curtail or discharge the deferred purchase-money indebtedness at that time, and there is no allegation that he made any new or different commitment. So the third-party beneficiary theory affords no relief to Tuscarora.

Finally, we hold that Tuscarora may not invoke the doctrine of marshalling of assets. Tuscarora argues that BVA was obligated to apply ratably to the eight lots the payments received from Sneider for the other four lots on which there had been construction and with which we are not here concerned. Had this been done, Tuscarora says that BVA's lien against the subject lots would have been satisfied in full. However, BVA was not doubly secured. Each of its obligations was secured separately upon a specified lot of land, and the equitable remedy of marshalling is inapplicable. See *Kidwell* v. *Henderson*, 150 Va. 829, 143 S.E. 336 (1928).

For the reasons assigned, we hold that the chancellor did not err in sustaining demurrers to the original and amended bills of complaint, and in overruling Tuscarora's motion for leave to file a second amended bill of complaint.

*Affirmed.*