# HERBERT S. HYATT ET AL. v. MARYLAND FEDERAL SAVINGS AND LOAN ASSOCIATION ET AL.

[No. 1091, September Term, 1978.]

*Decided June 8, 1979.*

The cause was argued before MASON, WILNER and MACDANIEL, JJ.

*James R. Trimm* for appellants.

*Kevin M. O'Connell* and *David E. Betts,* with whom were *Betts, Clogg & Murdock* on the brief, for appellees.

MacDANIEL, J., delivered the opinion of the Court.

The appellants, Herbert S. and Jerry H. Hyatt, sought a judgment, in the Circuit Court for Montgomery County, declaring that a mortgage held by them was superior to any liens of Maryland Federal Savings and Loan Association, one of the appellees, and that any subordination agreements purporting to create superiority in Maryland Federal were null and void.

The evidence in the court below showed that on September 1, 1971, Matthew M. Witenstein, the mortgagor, entered into a $47,500 purchase money mortgage with Paul A. Welsh, the mortgagee, in connection with the purchase by Witenstein of real estate from Welsh. The real estate (hereinafter referred to as the "subject property") consisted of 11.0286 acres in Damascus, Montgomery County, Maryland. The property was described in the mortgage by metes and bounds. The mortgage was recorded on September 1, 1972, among the land records of Montgomery County. It included the following provision:

> "This mortgage will be subordinated to bona fide ground development and construction loans . . . ."

On July 20, 1972, Welsh borrowed $7,500 from the Bank of Damascus (hereinafter "the Bank") and "assigned" the mortgage to the Bank. A standard assignment form was recorded on July 25, 1975, and Witenstein was given notice. Herbert Hyatt, President of the Bank, testified in the court below regarding the purpose of the "assignment." He said:

> "Q The bank originally took the assignment purely as collateral security for the $7,500 loan, is that correct?
>
> A That was the original intent; yes, sir.
>
> Q And, —
>
> A However, it was assigned and completely recorded.
>
> Q Well, the purpose —
>
> A But the purpose was in order to allow him credit so that he could borrow money.

Q  In other words, it was used as collateral security
   for the loan of $7,500.00?
A  That's true."

The Bank took over collection on the mortgage. Mr. Hyatt explained:

" ... we required that as additional security on the note, the $7,500.00 note. We put them in the Collection Department in every case so that he could not get the payment from Witenstein and spend it without us getting it."

In September 1972, Witenstein made an interest payment on the mortgage to the Bank. Subsequently, Welsh refinanced the $7,500 demand note and replaced it with a new $7,500 note. The mortgage was still held as security and for collection.

On November 15, 1972, Witenstein, individually and as the sole general partner of Damascus Developers, a limited partnership, signed and recorded a subdivision record plat respecting the subject property. The plat stated:

"There are no suits of action, leases, liens or trusts on the property included in this plan of subdivision."

On December 5, 1972, Witenstein and Damascus Developers executed a mortgage to Maryland State Savings and Loan Association to secure a $284,000 loan. The mortgage, which created a lien on certain portions of the "subject property," was recorded on December 6, 1972. An agreement between Witenstein and Welsh subordinating the $47,500 mortgage (which had been "assigned" to the Bank for collateral) to the mortgage with Maryland State Savings and Loan Association was recorded on December 7, 1972.

On January 25, 1973, the appellants purchased the $47,500 mortgage from Welsh for $25,000 in cash and assumption of payment of the $7,500 demand note. The agreement was reduced to writing, and the Bank assigned its interest in the mortgage to the appellants. The assignment was not recorded until April 11, 1975. The Bank still held the mortgage for collection, but it was no longer security for the $7,500 debt.

Witenstein was notified of the purchase of the mortgage, and he continued to make payments to the Bank on the mortgage debt.

On September 2, 1973, Witenstein recorded a subdivision record plat for another portion of the "subject property." The plat made the same statement as above regarding liens on the property. On February 28, 1974, another mortgage was executed between Witenstein/Damascus Developers and Maryland State Savings and Loan Association to secure a $200,000 loan. It was secured by most, but not all, of the "subject property" and was recorded on March 1, 1974. On March 4, 1974, another subordination agreement with Welsh was recorded.

In both of the Maryland State Savings and Loan Association mortgages and in the subordination agreements, the property affected was described according to the record plat subdivision and not by metes and bounds.

In 1974, the Maryland State Savings and Loan Association foreclosed on the $200,000 loan and, at the foreclosure sale, purchased the property affected by that mortgage. The remainder of the "subject property" is still owned by Witenstein who, on March 11, 1975, filed for bankruptcy.

At the time of the above foreclosure sale, the appellants were not aware that some of the property subject to their mortgage was being sold. Mr. Hyatt explained:

> "The advertisement in the foreclosure proceedings only spoke of lots and blocks. Since I had no knowledge that there were lots and blocks attempted to be subdivided off the property I had no knowledge at all. I was confident that it just covered the townhouse development which was next to this."

The appellants first discovered the facts surrounding the second and third mortgages in April 1975, when they had the title of the "subject property" searched in preparation for their own foreclosure. The title search revealed the subordination agreements. The last title search had been at the time that the $47,500 mortgage had been given as security to the Bank.

Mr. Hyatt was also questioned as follows with regard to the provision in the $47,500 mortgage that it would be subordinated to bona fide ground development and construction loans:

"Q But had you been asked to subordinate this mortgage in accordance with these terms you would have done it, wouldn't you?

A If it had been in accordance with those terms, if it was a bona fide construction loan. However, these subordinations were not.

. . . .

Q Were these not bona fide ground development loans, to your knowledge?

A Not on my property, not on the subject property.

Q On what do you base that statement?

A I'm positive. I live near there, and I looked at it, and there is what happened to it. It is growing up in weeds.

Q Did you make an inquiry to find out what happened to that money or where it went?

A I had no knowledge of anything. I didn't know that there was money involved until the title report showed it.

Q Well, you are familiar with real estate sufficiently, I think, to answer this question. It is expensive to prepare and have engineering done, and prepare a plat; isn't it?

A I suppose so.

Q Isn't that a phase of ground development?

A It could be.

Q Isn't it necessary before you can subdivide to have engineering work done?

A I would think so.

Q You don't know whether the money went into the cost of engineering incident to the plat, do you?

A I — well, no. I have no direct knowledge of where

the money went; however, that would not have been very much involved in that."

The lower court held that Title 9 of the Uniform Commercial Code applied to the facts of this case and that, because the Bank had not filed a financing statement, it had an imperfect assignment of the $47,500 mortgage. Consequently, the lower court said, the Hyatts' assignment also was imperfect, and they were unsecured creditors as far as third parties were concerned. The court concluded that the appellants had a lien superior to Maryland Federal Savings and Loan Association to the extent of $7,500 plus interest [1] but that, beyond that amount, Maryland Federal had priority. The appellants now contest that ruling.

Both the appellants and the appellees have presented arguments to us concerning the applicability and interpretation of various provisions of the Uniform Commercial Code and the Real Property Article, and the lower court based its decision on the same. We find it unnecessary to reach these arguments, and we will uphold the lower court decision based on entirely different reasoning not directly addressed by any of the parties.

We consider *Kennedy v. Betts,* 33 Md. App. 258 (1976), to be binding on the present decision. In the *Kennedy* case, the appellant asked the Court to "decide that a first deed of trust, for her benefit, was not subordinated to a second deed of trust, notwithstanding a subordination agreement executed, with express authority, by the trustees named in the Kennedy, or first, deed of trust." 33 Md. App. at 259. The "express authority" was as follows:

" '... [T]he trustees, without the necessity of obtaining the prior consent of the Deed of Trust Note holder, shall enter into an Agreement subordinating this Deed of Trust to any and all bona fide construction and/or permanent loan placed upon the herein described premises or any portion or portions thereof ...' "

---

1. No parties to this case contest the priority of the appellants with respect to the $7,500 loan, and, therefore, we will not address the issue.

This Court said that in the record there was no showing as to the extent that the second mortgage monies were, or were not, used for construction or permanent loans. The Court refused to remand the case for further inquiry into the question, and refused to rule that the first deed of trust was not subordinated to the second. We explained the result as follows:

"The general rule is that where there is an agreement subordinating a first lien to a subsequent lien for purposes of a construction loan, in the absence of an express covenant from the subsequent lienor to the prior lienor to see to the application of the sums advanced, the diversion of funds on the part of the mortgagor is a risk run by the prior lienor unless he is able to demonstrate collusion between the mortgagor and the subsequent lienor. *Gill v. Mission Savings & Loan Association,* 236 Cal.App.2d 753, 46 Cal. Rptr. 456 (D. Ct. App. 1965); *Iowa Loan and Trust Co. v. Plewe,* 202 Iowa 79, 209 N. W. 399 (1926), *commented on in* 12 Iowa L. Rev. 201, 203 (1927); *Cambridge Acceptance Corp. v. Hockstein, supra;* IV *American Law of Property* § 16.106 D (A. Casner ed. 1952); L. Jones, *A Treatise of the Law of Mortgages of Real Property* § 742 (8th ed. 1928); Note, 42 Yale L. J. 980, 982 (1933).

Capital did not promise, in the instant case, to see to the application of the sums it advanced. Even if we were to assume *arguendo* that the subordination agreement did somehow subject Capital to policing its monetary advances to the borrower, the proof of the amount expended by the borrower for other purposes is utterly lacking. In our view, when a party who has subordinated his lien for some express purpose to a subsequent lienor seeks to avoid the effect of the subordination agreement on the ground that the purpose of the agreement has been frustrated by the subsequent lienor, it is incumbent upon the prior lienor to prove the *allegata.* He may not simply assert the contention and thereby shift to

the subsequent lienor the burden of disproving the averment.

We think the record amply demonstrates that the case now before us falls within the ambit of the general rule inasmuch as collusion is not present, and that Judge Clapp properly overruled the appellant's exceptions to the auditor's report. That the appellant did not obtain the contemplated value for her property is no reason to abrogate the subordination agreement so as to restore appellant to the priority position that she bargained away." (Footnote omitted.) 33 Md. App. at 262-63.

In the present case, a clause in the original $47,500 mortgage addressed the issue of subordination to subsequent "ground development and construction" loans. Such a clause is subject to the normal rules of contract construction, *Jones v. John S. Stubbs & Assoc.,* 243 Md. 480, 483 (1966). We hold that the clear meaning of the clause in the original mortgage was that the mortgage would, by the operation of that clause, become subordinated to all subsequent bona fide ground development and construction loans. Therefore, there is no need to address the question of priority, or perfection, of liens or of the validity of the assignments of the original mortgage. In addition, because the signed subordination agreements were not required by the above clause, and, hence, were superfluous, we need not address the question of whether they were signed by the proper parties.

The one issue raised by the subordination clause is whether the subsequent mortgages were bona fide ground development and construction loans. As indicated in the *Kennedy* case, *supra,* unless a duty to police is placed on the subsequent mortgagee,[2] the later loans are presumed to be *bona fide* for the purposes specified. The burden is then on the original lien-holder to rebut that presumption with

---

2. In the present case no duty was placed on the subsequent mortgagees, by the subordination clause, to ascertain that the money advanced was in fact put toward the specified purposes.

evidence of diversion and collusion if he wishes to defeat the priority of the later liens.

A thorough review of the record extract in this case convinces us that the appellants failed to meet their burden of showing that any of the monies from the subsequent loans were diverted from their proper uses under the subordination clause. Mr. Hyatt's testimony that there had been no building on the subject property is not proof of any diversion of funds. As the appellees correctly pointed out in the court below, the money could have been used for preliminary engineering for the subdivision and plats. In addition, there may have been numerous other preliminary building expenses, such as architectural planning or water and sewer costs, which were not eliminated by the appellants. Nor does the fact that the subsequent mortgages made no mention of their purpose tend to show a diversion of funds since the subsequent mortgagee was under no duty to see to the proper application of the funds.

The appellants have also failed to show any fraud or collusion between Witenstein/Damascus Developers and the subsequent mortgagee. They argue that the misstatement of Witenstein on the subdivision plats with respect to the existence of any liens was fraud with respect to them. We disagree. The misstatements are not evidence that the subsequent loans were not bona fide. In addition, the appellants would have discovered, by a title search, the existence of the $284,000 mortgage and the first subdivision plat before they assumed the original mortgage from the Bank.

We hold, therefore, that the evidence introduced by the appellants amounts to "no more than a surmise, possibility, or conjecture" of diversion of funds, and collusion, and, as such, it is legally insufficient to satisfy the appellants' burden. *See Beahm v. Shortall,* 279 Md. 321, 341-42 (1977), and the cases cited therein.

Although the lower court did not address the above issues, we will uphold its decision on this alternative basis. Since no legally sufficient evidence of diversion of funds or fraud was introduced below, no purpose would be served by remanding

to the court below for additional fact-finding. Maryland Rule 1085. *See also Kennedy v. Betts, supra.*

> *Judgment affirmed.*
> *Costs to be paid by appellants.*