Richmond

FIRST FUNDING CORPORATION, ET AL.

v.

WARREN R. BIRGE, JR.

August 30, 1979.

Records Nos. 771340 and 771341.

Present: I'Anson, C. J., Carrico, Cochran, Harman, Poff and Compton, JJ.

L. *Lee Bean* (*Bean and Hylton,* on brief), for appellant. (Record No. 771340).

*Henry C. Mackall* (*Glenn H. Silver; Mackall, Mackall and Walker,* on brief), for appellee. (Record No. 771340).

*Frank E. Brown, Jr.,* (*Barham, Radigan, Suiters & Brown,* on brief), for appellants. (Record No. 771341).

*Henry C. Mackall* (*Glenn H. Silver; Mackall, Mackall and Walker,* on brief), for appellee. (Record No. 771341).

COMPTON, J., delivered the opinion of the Court.

In this creditors' rights suit seeking to establish priorities of liens on real estate, the main issue is whether, considering the language of the subordination clause in this case, the lien of a purchase money

deed of trust on one parcel of land properly may be subordinated to the lien of a deed of trust securing a construction loan on the subject parcel and another parcel.

In February of 1974, plaintiff Warren R. Birge, Jr., executed two separate contracts to sell to defendant W. H. Quatmann Associates, Incorporated, two unimproved parcels of land designated as Lot 3 and Lot 48 in Parkview Hills, a residential subdivision in Fairfax County. Quatmann planned to construct a residence on each lot. The lots did not adjoin but were situated diagonally across the street from each other.

The contract for Lot 3 provided for a sale price of $34,500 with a purchase money note for $26,500; the contract for Lot 48 was for $37,500 with a purchase money note of $29,500. Each contract provided that the note was to be secured by a deed of trust on the property described in that contract. Each contract carried the following pre-printed language on page one:

> Said deed of trust and note shall contain a provision requiring and directing the trustees under said deed of trust, without the necessity of obtaining the prior consent or joinder of the deed of trust note holder, to subordinate the said deed of trust to any bona fide construction and/or permanent loan or loans placed from time to time upon the subject property or any portion or portions thereof, without curtailment and at no cost to Purchaser.

Page two of each contract contained the following provision, which had been inserted by typewriter in the printed form contracts:

> Seller also agrees to subordinate to a Construction Loan issued by an authorised [sic] lending institution.

Purchaser Quatmann employed the law firm of Kelly, Louk, Lawson, Swinburne & Dixon to examine the title. Richard T. Horan, an attorney employed by the firm, did the work and supervised the closing of the transaction which was held in the firm's office in June of 1974. The two lots were conveyed by one deed and Birge received the two purchase money notes.

The notes were secured by separate recorded purchase money deeds of trust conveying the respective lots from Quatmann to defendants Robert C. Swinburne and Robert B. Hood, Jr., trustees. They were partner and employee, respectively, of the Kelly law firm. Each of the two deeds of trust, in referring to the individual note which it secured,

recited that the entire principal balance, plus accrued interest, was to become due on a day certain in June of 1976, "or upon the sale of the house to be constructed on the hereinbefore described property, whichever first occurs." Immediately following that provision, the deeds of trust contained the following language upon which, as we shall see, the decision of this case turns:

> The parties hereto agree that the lien of this deed of trust may be subordinated to any bona fide construction loan placed with a reputable lending institution without the necessity of joinder by the holder of the note.

Subsequently, Quatmann obtained a loan for construction of the two houses from defendant First Funding Corporation. In August of 1974, Quatmann executed a promissory note payable to the order of First Funding in the principal sum of $160,000. This note was secured by one recorded deed of trust conveying Lots 3 and 48 to Arthur M. Pomponio and Joseph DuBois, trustees. Horan prepared this note and deed of trust, acting on written instructions from First Funding. In connection with the closing of that transaction, Horan had Swinburne and Hood execute two deeds of subordination, and recorded the same, which purported to subordinate the liens of the two separate purchase money deeds of trust to the lien of the one deed of trust securing the First Funding note. Birge was not consulted about the subordinations nor did he consent to them.

Later, and when construction of the buildings on the two lots had been partially completed, Quatmann defaulted on its payments under the several notes to Birge and First Funding. In May of 1975, preliminary to foreclosure by First Funding, defendant Robert J. Madigan, an attorney-at-law, was substituted as trustee for Pomponio and DuBois under the deed of trust securing the construction loan. After efforts by Birge, Quatmann and First Funding had failed to settle the controversy stemming from Quatmann's default, First Funding, acting through Madigan, began foreclosure proceedings.

This suit was filed by Birge in the forenoon of July 3, 1975, prior to commencement of the foreclosure sale held later that same day. Madigan received and reviewed a copy of the suit papers prior to supervising the sale.

In his bill of complaint naming Quatmann, First Funding, Madigan, Swinburne and Hood as parties defendant, plaintiff relied on the foregoing basic facts. In addition, he alleged that Quatmann improperly put the construction loan advances to personal use, also

asserting that First Funding was not a reputable lending institution. Plaintiff also alleged that Madigan had full knowledge of the fact that there was a "genuine dispute as to the number and priority of the liens" upon the two lots, that Madigan had informed plaintiff that the lots would be sold at foreclosure, and that plaintiff was "unable to take intelligent action to protect his interest at any such sale." In the prayer of the bill, plaintiff asked "that the liens binding on [the subject] properties and their priorities be established" by the trial court. Plaintiff did not seek to enjoin the foreclosure sale.

At the sale, the two parcels, offered together and not separately, were sold at public auction to the only bidder, First Funding, for $110,000. Later, Madigan delivered a deed dated in December of 1975 to the two lots to First Funding. Madigan's report and accounting subsequently filed with the commissioner of accounts stated that First Funding had a first trust on both properties, and proceeds of the sale were thus distributed.

The evidence in this suit was heard *ore tenus* by the chancellor in 1977. Birge, Horan, Swinburne, Hood, Madigan and the Chief Loan Officer of First Funding testified. In addition, Swinburne and Hood called an expert witness in construction loan financing who testified that the loan by First Funding to Quatmann was a "bona fide construction loan."

Plaintiff called attorney F. Shield McCandlish who testified "as an expert in the field of real estate law in general, and specifically with respect to problems surrounding subordination documents." McCandlish stated that the subordination provisions in the instant purchase money deeds of trust contained "standard language." He also stated that it was "uncommon practice to have a construction loan [deed of trust] cover more property than the [deed of trust] being subordinated covered." He noted that in the case of a subdivision, however, one construction loan often "covered" construction on a number of lots, but the construction loan "would generally be broken down into a number of notes which would be separately and exclusively secured on one particular lot" so that "the entire construction loan [would] not [be] a lien on any one lot."

McCandlish was asked to describe "the effect on the holder of the two purchase money notes secured by the two purchase money deeds of trust in a hypothetical situation if they were subordinated to a single deed of trust [covering both properties] securing a construction loan?" He responded:

Well, it would put the note holder in a very disadvantageous position in many situations if the construction lender were to foreclose as in this case. I believe there was a construction loan of $160,000 which would be a lien on each lot. And, if [the purchase money noteholder] had one note in default and one not in default, for instance, and tried to foreclose on one of those lots, he would be unable to bid it in himself because he would have to bid more than $160,000 just on one lot. There is [here] no breakdown as to the amount of the construction loan which is secured exclusively on a separate lot. The note holder of the purchase money trust is at a terrible disadvantage. He would also have a problem in negotiating his notes for that particular reason. If the prospective buyer of the note knew the entire situation, it's very unlikely he would be able to negotiate the note, and he would have trouble in foreclosing his own trust or protecting himself in the event the construction lender were to foreclose.

McCandlish stated that under the circumstances of this case he, as trustee under the purchase money deeds of trust, would not have executed the respective deeds of subordination without the consent of the noteholder.

After considering the evidence and memoranda of law, the chancellor decided by written opinion that Swinburne and Hood as trustees did not have the authority to subordinate the two individual purchase money deeds of trust on the two separate lots to First Funding's one deed of trust covering both lots. While finding from the evidence that Quatmann had obtained a "bona fide construction loan" and that First Funding was "a reputable lending institution," the court declared the respective subordinations invalid and void *ab initio,* ruling that the liens of Birge's deeds of trust were "first trusts on each of the respective lots."

First Funding on the one hand and Swinburne and Hood on the other filed separate appeals to the June 1977 final decree establishing the first liens in accordance with the chancellor's decision. Subsequent to entry of the final decree, Madigan's motion for reconsideration was sustained and he was dismissed as a party defendant. He argued that, as a trustee, he had "ceased to exist for the purpose of any equitable or other judicial relief," asserting that the "exclusive remedy" against him as a trustee was in the statutory accounting proceeding, Code § 26-15, in which plaintiff elected not to participate.

On appeal, First Funding argues that the interpretation of the purchase money deeds of trust and, in particular, the subordination clause

should be accomplished not only by examining "the face of the instruments, but also from the situation of the parties and the nature and object of their transaction." First Funding states: "It is obvious that the transaction for the sale of Lots 3 and 48 was perceived by both Birge and Quatmann as a transaction for the acquisition of a single site for the construction project for two houses to be covered by a single loan secured by Lots 3 and 48 as a unit, as is customary in such situations."[1] First Funding also contends that because the trial court found that it was a "reputable" lending institution and that the construction loan was "bona fide," then, in view of the broad language of the subordination clause in the deeds of trust, the trustees had "plenary power...to subordinate to a loan whether secured by a single deed of trust, embracing both lots, or by separate deeds of trust to each lot since the lots constituted one construction project and were purchased for the purpose of one development."

Swinburne and Hood, on the other hand, argue that the trustees' authority to subordinate should be determined by considering only the language that the parties used in the trust instrument. They say that when, as here, trustees in a deed of trust are authorized to subordinate the trust "to any bona fide construction loan placed with a reputable lending institution" and the trustees, in good faith, subordinate such a loan, then a court may not properly limit the express power and authority conferred by the trust by considering extrinsic factors outside the instrument. The trustees contend that the trial court improperly relied on (1) McCandlish's description of what was "usual" or "customary," (2) language in the Birge contracts of sale, (3) Birge's interpretation of the subordination clause,[2] and (4) the relationship of Swinburne and Hood to the law firm which handled both the Birge sale and the construction loan. The trustees maintain that regardless of the extrinsic factors, Birge consented to subordination to *any* bona fide construction loan and that his liens were,

---

[1] Birge, like Quatmann a builder of residences, had testified that he anticipated Quatmann would build homes costing about $70,000 each on the lots purchased and that construction on both houses would proceed at the same time.

[2] Birge, who had no direct communication with the principal of the Quatmann corporation, Horan, Swinburne or Hood at any time before the subordination took place, testified that he never contemplated that the liens of his two separate deeds of trust would be subordinated to one deed of trust on both lots. He said he did not fully understand the impact of such procedure upon his security until the time of the foreclosure sale. At the sale, which plaintiff attended with his attorney, Birge, because of financial limitations, was prepared to bid on only one lot separately and was prevented, he said, from so doing because the two lots were offered together by the auctioneer.

in fact, subordinated to such a loan. The trustees observe that Birge's contention actually amounts to a claim that the trustees "acted wrongfully in subordinating both of his trusts to the lien of a single construction loan trust, and that because of this error, he should be placed in a better position than he would [have] enjoyed had the subordination been handled in the manner he now claims would have been proper."

We agree with the trustees that the subordination clause should be interpreted by an examination of the face of the trust instrument, but we reject the argument made by them, and First Funding, that the subordinations were valid. We think the trial court properly ruled that the subordinations were void *ab initio* because the trustees acted beyond their authority.

A trustee in a deed of trust is authorized to act with reference to the trust property only in the manner which the deed either by express terms or by necessary implication provides. *Schmidt & Wilson* v. *Carneal,* 164 Va. 412, 415, 180 S.E. 325, 326 (1935); *Wilson* v. *Wall,* 99 Va. 353, 355, 38 S.E. 181, 181 (1901). *See Tuscarora, Inc.* v. *B.V.A. Credit Corp.,* 218 Va. 849, 855, 241 S.E.2d 778, 781 (1978). The power of a trustee subordinating the lien of a deed of trust is thus limited and defined by the instrument under which he acts and he must perform in strict compliance with the trust document.

An examination of the terms of the trust document under which Swinburne and Hood acted with respect to each lot reveals the following facts. The deed conveyed in trust one specific lot describing the parcel by a single lot number. The trust instrument, in referring to the due date of the single note which the deed of trust secured, recited that the note was due on a day certain *or* when the sale of *the* house to be constructed on *the* described property took place, whichever event first occurred. Manifestly, the foregoing trust language addressed a transaction in which one house was to be built on the described lot with the construction of that house on that lot to be financed by borrowed funds. To be anticipated, of course, was the fact that the construction lender would demand a preferred security position in connection with a commitment for construction funds. Then, among the foregoing provisions referring specifically to one house to be built on the designated lot, was found the subordination clause at issue permitting the trustees to subordinate, without Birge's joinder, the lien of the deed of trust to any bona fide construction loan placed with a reputable lender.

Construing all these provisions of the trust instrument together, including the language of the subordination clause, we believe that the term "construction loan" meant a loan which was solely for construc-

tion on the land subject to the purchase money trust, not for construction on other property. Thus, we hold that Swinburne and Hood had authority to declare the lien of the specific purchase money deed of trust subordinate only to the lien of a deed of trust directed to the one lot referred to in such trust instrument, and not to such lot *and* another lot. Here, as the court below pointed out, the trustees have, in effect, rewritten the trust document to authorize subordination to a lien on the subject property "and any other property." And they have, in the process, permitted the quality of First Funding's security to be enhanced while at the same time caused the value of Birge's security to be undermined, as illustrated in the testimony of the expert witness, *supra.*

Swinburne, Hood and First Funding contend that our recent decision in *Tuscarora, supra,* dictates a contrary result. We do not agree. Not only were the facts in *Tuscarora* different but the issue presented here was not before the court in that case.

■ The only other argument defendants seriously advance on appeal is articulated by Swinburne and Hood. They point out that Birge permitted foreclosure to proceed and allowed the trustee's account to be confirmed unchallenged. They argue that the accounting established the First Funding trust as the first lien on the property and that the court below was without jurisdiction to make any findings contrary to the priority of liens established in Madigan's accounting. We disagree with that argument.

The chronology relating to this issue is as follows. At some date, undisclosed by the record, prior to the July 1975 foreclosure, the sale was duly advertised. The notice stated that a trustee's sale of "Lots Three (3) and Forty-Eight (48), PARKVIEW HILLS" would take place "[i]n execution of a Deed of Trust" made by Quatmann. The notice did not assert that the lien was a first lien but stated that the sale would "be made subject to . . . liens . . . of record."

As we have noted, this suit was filed and Madigan read a copy of the pleadings before the sale was commenced on July 3. Madigan testified that as he reviewed the bill of complaint he realized for the first time that Birge was claiming a prior lien. He further stated:

> At that point in time I had looked at all the documents, and I couldn't for the life of me think of any reason why there would be any argument over the priority of liens. So I just ignored that and went ahead with the sale.

Subsequent to the sale, Madigan filed an account of sale with the appropriate commissioner of accounts in compliance with Code §26-

15. Listed on the account under the heading "Amount available to apply to Deed of Trust Note held by FIRST FUNDING CORPORATION" was the entry: "First Trust Note Principal 140,000.00." Thereafter, the commissioner "EXAMINED and APPROVED" the account. No objection to the report was filed by Birge before the commissioner, as permitted by Code § 26-29. No exception, as permitted by Code § 26-33, was taken by Birge after the account was reported to the trial court. Consequently, the report stood confirmed by the passage of 15 days. Code § 26-33. When such report is confirmed by the lapse of time without exceptions, it "shall be taken to be correct, except so far as it may, . . . in proper time, be surcharged or falsified; . . . ." Code § 26-34. Any suit to surcharge and falsify such an account may be brought within ten years after the account has been confirmed. Code § 8.01-245(B).

Even considering the foregoing statutory scheme for the approval of a trustee's account, we do not believe that Birge was precluded from asserting in a suit in equity the superiority of his lien under these circumstances. It is true that Birge could have sought to enjoin the sale and that he could have attacked the foreclosure proceeding as it ran its course through confirmation of the trustee's account, and even thereafter. Nevertheless, the fact remains that Birge filed this suit prior to the sale to have the priority of his liens established and the trustee had knowledge of the pending litigation and of the dispute.[3] Birge was entitled to prosecute the suit in the circuit court and to stand on his position that his liens were superior to that of First Funding. After all, the notice of sale announced that the property was to be sold subject to liens of record which, of course, included valid liens of Birge. And the mere *ex parte* notation on Madigan's account that First Funding held a "First Trust Note" did not serve to oust the trial court of jurisdiction to determine the status of Birge's liens. Accordingly, Birge was not bound to intervene in the proceeding before the commissioner of accounts, which was primarily to make proper accounting of Madigan's actions as they affected First Funding.

For the foregoing reasons, we find no error in the decision of the trial court and the adjudications below will be

*Affirmed.*

[3] At that point, it may well have been the duty of Madigan to seek the aid of the court before continuing with the foreclosure. Such a trustee has a duty, under certain circumstances, to apply to a court of equity to remove impediments to a fair execution of the trust where there is doubt or uncertainly as to prior incumbrances on the trust subject or where there is a conflict between the creditors. *See Muller's Adm'r* v. *Stone,* 84 Va. 834, 6 S.E. 223 (1888).