474 A.2d 1360

The **RIGGS NATIONAL BANK OF WASHINGTON, D.C.**
**et al.**

v.

**Robert Horace WINES and Willam F. Lake, Trustees.**

**No. 1291, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

May 15, 1984.

220

G. Vann Canada, Jr., Rockville, for appellants.

Joseph V. Truhe, Jr., Rockville, with whom were Miller, Miller & Canby, Rockville, on brief, for appellees.

Argued before MOYLAN, WILNER and BISHOP, JJ.

WILNER, Judge.

On or about October 8, 1976, Juliet D. Wines and Louise P. Lake sold a certain tract of land in Montgomery County to The Greenberg Company. Part of the purchase price— $55,000—was to be paid over a five-year period, that obligation being evidenced by a promissory note and secured by a purchase money deed of trust on the property.

The deed of trust, dated October 8, 1976, recites the debt, describes the property, and provides, in relevant part: "The lien hereof shall be subordinate to the lien of any Deed of Trust or Mortgage from a recognized lending institution, *the proceeds of which are to be applied to the erection of improvements on property herein described."* (Emphasis supplied.)

The instrument named Robert W. Lebling and S. David Elling as trustees for Ms. Wines and Ms. Lake. It provided, finally, that any default by the debtors in the payment of any prior lien would cause the entire debt to mature and permit immediate foreclosure.

On June 18, 1980, Montgomery Knolls II Limited Partnership (MKLP), which had succeeded Greenberg in title, executed a note and deed of trust in favor of The Riggs National Bank of Washington, D.C. (Riggs) to evidence and secure a construction loan in the amount of $1,620,000.

Although the deed of trust is not in the record before us, we are informed that it covered not only the land purchased from Wines and Lake but an adjacent lot as well. The record does not reveal the exact size of the adjoining lot, although it was apparently larger than the lot purchased from Wines and Lake. The record also fails to indicate whether there were any other encumbrances upon the adjoining lot. James L. Trimble and Jerome P. Griffin were named as trustees for Riggs.

Contemporaneously with the execution of the note and deed of trust to Riggs, MKLP and the respective trustees under the two deeds of trust (Trimble, Griffin, Lebling, and Elling) entered into a subordination agreement which provided, in relevant part, that

"the lien of the Deed of Trust dated October 8, 1976 . . . from [*sic*, to] Robert W. Lebling and S. David Elling, Trustees, securing Juliet D. Wines and Louise P. Lake . . . shall be, and the same is hereby agreed to be junior and subordinate to the lien of [the Riggs deed of trust] securing [Riggs] in the full principal sum of [$1,620,000]."

This subordination agreement had been drafted by Riggs' counsel and was sent to Lebling along with a subdivision plat.

The subdivision plat, which had been signed by all four trustees—Lebling and Elling on behalf of Wines and Lake and Trimble and Griffin on behalf of Riggs—showed the combination of *both* parcels, without separate designation, subdivided into 24 lots. The plat is dated March 14, 1980, and was recorded June 16, 1980.

On November 5, 1981, Wines and Lake filed an action at law in the Circuit Court for Montgomery County against Riggs, MKLP, and an MKLP general partner alleging fraud, breach of contract, and negligence with respect to the June 18, 1980, subordination agreement and seeking money damages. The essence of this action was that the plaintiffs, through their trustees, agreed to subordinate their deed of trust to that running in favor of Riggs upon

the representation and understanding that the proceeds of the Riggs loan would be used *exclusively* for the construction of improvements on the property secured by their deed of trust, and that Riggs instead permitted the proceeds to be used to finance construction on other property.

The same day, Lebling and Elling commenced a foreclosure proceeding under the Wines-Lake deed of trust. As part of that proceeding, they filed a petition asking the court to declare the lien of that deed of trust superior to the lien of the Riggs deed of trust. They sought to adopt, in this petition, the averments made in the Wines-Lake declaration filed on the law side of the court, a copy of which was attached as an exhibit. Eventually, Robert Wines and William Lake were appointed as substitute trustees, replacing Lebling and Elling.

While these proceedings were pending, Riggs foreclosed on its deed of trust and sold the combined properties. The fight then presumably centered on the proceeds from the sale. On August 29, 1983, the court entered an order in the equity proceeding granting Wines' and Lake's motion for summary judgment and declaring that (1) the June, 1980 subordination agreement is null and void, and (2) the lien of their deed of trust is senior to that of Riggs. The motion was based largely on a Virginia case, *First Funding Corporation v. Birge*, 220 Va. 326, 257 S.E.2d 861 (1979).

Riggs has appealed, contending that the Virginia case is not apposite, that the court "made findings of fact not supported by the record," and that the court erred in finding that Lebling and Elling exceeded their authority in entering into the subordination agreement.

In considering Riggs' complaint, we observe by way of preface that the court made no findings of fact, either in its order or at the hearing on appellees' motion. Nor did the court ever mention the Virginia case. The order, which simply made the two declarations noted, gave as a rationale "the reasons set forth in Plaintiffs' Motion." From the contentions made in that motion and at the argument on it,

it would seem that the court's order necessarily rested on *sub silentio* determinations that (1) the Wines-Lake deed of trust was intended to be subordinate to the Riggs lien only to the extent that the proceeds of the Riggs loan were used for improvements on the Wines-Lake property, (2) the trustees had no authority to enlarge that subordination, and (3) the subsequent subordination agreement, by purporting to enlarge the subordination, was therefore ineffective. That was generally the subject matter of the Virginia case.

In *First Funding Corp. v. Birge,* the plaintiff Birge, by two separate contracts, sold two unimproved, non-contiguous lots to Quatmann, who planned to construct one house on each. Each contract called for a deed of trust to secure the note and required the trustees thereunder "to subordinate the said deed of trust to any bona fide construction and/or permanent loan or loans placed from time to time upon the subject property or any portion or portions thereof, without curtailment and at no cost to Purchaser." An additional clause stated: "Seller also agrees to subordinate to a Construction Loan issued by an authori[z]ed lending institution."

At settlement, the two lots were conveyed to Quatmann by one deed, although separate notes and deeds of trust were executed to evidence and secure the respective deferred purchase money obligations. The obligation, in each case, was to become due in June, 1976 "or upon the sale of the house to be constructed on the hereinbefore described property, whichever first occurs." Each deed of trust provided that "the lien of this deed of trust may be subordinated to any bona fide construction loan placed with a reputable lending institution without the necessity of joinder by the holder of the note."

Quatmann obtained a construction loan of $160,000 from First Funding Corporation. The loan was evidenced by one note and secured by one deed of trust on both lots. Birge's trustees (who happened to be members of the law firm that prepared the papers for First Funding) executed, with re-

spect to each of the two lots, a deed of subordination, purporting to subordinate the lien of the purchase money deed of trust on that lot to the lien of the one deed of trust securing the First Funding note. Quatmann eventually defaulted, First Funding threatened (and eventually commenced) foreclosure proceedings, and Birge sued to establish the priority of the respective liens.

Birge's case was tried on its merits. Testifying for Birge was one F. Shield McCandlish, accepted as an expert in real estate law generally and subordination agreements in particular. McCandlish opined that it was "uncommon practice" to have a construction loan deed of trust cover more property than the deed of trust being subordinated to it, and that, where a construction loan was to finance construction on more than one lot, there would generally be separate notes and deeds of trust taken, one for each lot, so that "the entire construction loan [would] not [be] a lien on any one lot." Otherwise, he said, the purchase money note holder would be at a "terrible disadvantage"; he would, effectively, be unable either to sell his note or to foreclose on it.

Upon this evidence, the trial court found that Birge's trustees had no authority to subordinate the individual purchase money deeds of trust to the one construction loan lien. The Virginia Supreme Court affirmed, but it did so solely on the basis of the language in the two purchase money deeds of trust, and without regard to the testimony of Mr. McCandlish. The Court found compelling the fact that each purchase money deed of trust involved one specific lot, looked to the construction of one house upon that lot, and was payable when "*the* house to be constructed on the *described* property" was sold. 257 S.E.2d at 865. (Emphasis in original.) Thus, it concluded (p. 865): "Construing all these provisions of the trust instrument together, including the language of the subordination clause, we believe that the term 'construction loan' meant a loan which was solely for construction on the land subject to the purchase money trust, not for construction on other property."

The Virginia case, of course, is not controlling precedent in Maryland; indeed, its factual predicate is somewhat different than that now before us. We do find the Court's reasoning persuasive, however; it is founded upon principles of law that are well recognized in this State.

■ The rights of the parties in this case depend upon the proper construction of the subordination clause in the 1976 purchase money deed of trust, read in the light of the other provisions of that instrument. That clause, in the words of *Rockhill v. United States*, 288 Md. 237, 241, 418 A.2d 197 (1980), was "drafted with the object of effecting subordination without further documentation when a given loan falls within the description of the subordination clause," and thus made any subsequent subordination agreement unnecessary. *See Hyatt v. Maryland Fed. Sav. & Loan*, 42 Md.App. 623, 630, 402 A.2d 623 (1979). It not only sets forth *ex facie* the nature and extent of the agreed subordination, but obviously controls the authority of the trustees to execute any further instruments.

■ A deed of trust, among other things, is a contract, and its language is to be construed in accordance with the law of contracts. If the language is clear and unambiguous, its construction is a matter for judicial interpretation "according to what reasonable persons in the position of the parties would have thought it meant." *Leisure Campground v. Leisure Estat.*, 280 Md. 220, 227, 372 A.2d 595 (1977). Only if there is an ambiguity will the court "attempt to ascertain the intent of the parties by considering appropriate extrinsic evidence." *Id. See also Jones v. John S. Stubbs & Assoc.*, 243 Md. 480, 221 A.2d 361 (1966).

■ The relevant language, as noted above, subordinates the lien of the purchase money deed of trust to the lien of "any Deed of Trust ... from a recognized lending institution, the proceeds of which are to be applied to the erection of improvements on property herein described."

That language, we think, is specific and unambiguous. Unlike the clauses at issue in *Rockhill v. United States*,

*supra,* 288 Md. at 244–45, 418 A.2d 197 (n. 3), and *Jones v. John S. Stubbs & Assoc., supra,* 243 Md. 480, 481, 221 A.2d 361, and *Kennedy v. Betts,* 33 Md.App. 258, 259, 364 A.2d 74 (1976), and *First Funding Corp. v. Birge, supra,* 220 Va. 326, 257 S.E.2d 861, which purported to subordinate generally to subsequent construction, development, or permanent loans placed on the property, the clause before us is more particular and more limiting. It does not subordinate to *any* construction loan lien subsequently placed on the property, but only one in which the proceeds of the loan are to be applied to the erection of improvements on the property. That condition was found to be *implicit* by the Virginia Court in *First Funding Corp.;* here, it is *explicit.*

The clear intent of the clause was to assure that the sellers' security would not, *in fact,* be adversely affected by subordination to a construction loan, that assurance arising from the expectation that the loss of position *vis a vis* the construction lender would be fully compensated by the value added to the land by reason of the construction. That expectation, and with it the economic rationale and underpinning of the subordination, would, of course, be entirely frustrated if the proceeds of the construction loan could be used to finance improvements to other property. There would then be no equivalent compensation for the loss of position.

This is quite different from the possibility of an unlawful diversion of construction loan funds in violation of the conditions attached to that loan which, absent a contractual provision to the contrary, is a risk borne by the subordinating lienholder. *See Rockhill v. United States, supra; Kennedy v. Betts, supra;* but *compare Fierst v. Commonwealth Land Title Ins. Co.,* 499 Pa. 68, 451 A.2d 674 (1982). Here, the question is whether the purchase money lien was, in the first instance, subordinated to the lien of a deed of trust that expressly permitted the proceeds to be used for purposes other than improving the subject property.

■ We conclude that, although the clause does not appear to preclude subordination merely because the subse-

quent construction loan lien covers more than the subject property, as was the case in *First Funding Corp.*, it very definitely precludes subordination to a subsequent instrument that permits the proceeds to be used to improve other property. That, the parties agree, is what the Riggs loan permitted, and that is what, in fact, occurred.

Because in our view the subordination clause is unambiguous, extrinsic evidence of the intent of the parties, or of any prevailing practice in the industry, is unnecessary. Nor would the events occurring in 1980 be relevant. The Riggs deed of trust does not fall within the ambit of the subordination clause in the 1976 purchase money deed of trust, and there is no claim here that Wines and Lake ever consented to an enlargement of that clause absent an assurance by Riggs that the proceeds of its loan would be used exclusively for construction on the one lot. Certainly, the trustees had no authority to enlarge the agreed subordination on their own.

For these reasons, we conclude that there is no genuine dispute of *material* fact revealed in the record and that the judgment of the Circuit Court was correct.

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.