587 A.2d 1179

**MAYOR AND COUNCIL OF ROCKVILLE**

v.

**Thomas J. WALKER, Jr., Substituted Trustee.**

**No. 906, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

April 3, 1991.

692

Paul T. Glasgow City Atty. (Venable, Baetjer & Howard, on the brief), Rockville, for appellant.

Thomas J. Walker, Jr. (Glenn A. Wasik, on the brief), Rockville, for appellee.

Argued before BISHOP, ALPERT and DAVIS, JJ.

ALPERT, Judge.

A lender took a mortgage on property that the mortgagor owned in fee simple, but subject to a condition subsequent with a power of termination (right of reentry) by the mortgagor's grantor. The issue before us is whether that mortgage can be foreclosed after the grantor has reentered and taken possession of the property due to the mortgagor's failure to satisfy the condition subsequent.

### Facts and Proceedings

In conjunction with its urban renewal program, the Mayor and Council of Rockville (the City) (appellant) entered into an "Amended and Restated Disposition and Development Agreement" (the Agreement) with the New Rock Rockville Town Center Partners (the Developer) on December 4, 1984. The purpose of the Agreement was to rehabilitate and improve Rockville's Town Center. To that end, the Agreement provided for the transfer of certain property

(the property),[1] which is the subject of these proceedings, from the City to the Developer.

On April 19, 1985, the parties entered into a further agreement—the "First Amendment to the Amended and Restated Disposition and Development Agreement"[2]—whereby the Developer transferred its controlling interest in the Agreement to the Developer's parent corporation.[3]

By a deed and indenture dated August 29, 1985, which properly was recorded in the Montgomery County Land Records, the City transferred the subject property to the Developer. The City, however, reserved the right "... following a default under the Disposition Agreement that is not cured within any applicable grace period, to reenter or take possession of the property hereby conveyed, subject to the rights of certain mortgage holders, all as specified in the Disposition Agreement."

On October 3, 1985, without the City's knowledge, Equitable Federal Savings Bank (whose substituted trustee is the appellee herein) made a loan to the Developer secured by a deed of trust on the subject property, which the bank recorded that day. The loan was due and payable on April 1, 1986, six months after placement. The Developer failed to pay the loan.

On October 15, 1986, the City notified the Developer that it was in default under the terms of the Agreement and demanded that the Developer cure the defaults. Specifical-

---

**1.** The City transferred to the Developer "parcel 2–N," which is located in the Rockville Town Center. *See Hadid Land Development Corp. v. Mayor and City Council of Rockville,* No. 1339, slip op. at 2 (Md.Ct. Spec.App. May 16, 1988).

**2.** Hereinafter, the Agreement and the First Amendment collectively are referred to as "the Agreement."

**3.** Hadid Land Development Corporation and Rockville Real Estate Corporation acquired all of the general partnership interests in the New Rockville Town Center Partners. *See Hadid Land Development Corp.,* No. 1339, slip op. at 2. Hereinafter, these entities collectively are referred to as "the Developer."

ly, the City complained that the Developer had "not diligent-ly pursued construction of the improvements" and had "placed unauthorized encumbrances or liens" against the subject property. When the Developer failed to cure the defaults in a timely manner, the City notified the Developer and the appellee on November 18, 1986 that the City had terminated the Agreement and that it intended to exercise its right to re-enter and take possession of the previously transferred property. The City re-entered and took posses-sion of the property that same day (November 18, 1986), recording its notice of re-entry and acquisition of the prop-erty among the Montgomery County Land Records.

On February 13, 1987, the Developer initiated litigation against the City to regain possession of the property. In *Hadid Land Development Corp. v. Mayor and City Coun-cil of Rockville*, Court of Special Appeals, No. 1339 (Md.Ct. Spec.App. May 16, 1988), this court found that the City had granted to the Developer "an estate subject to a condition subsequent with an accompanying right of re-entry." *Id.* slip op. at 24. Consequently, the City validly had terminat-ed its Agreement with the Developer and could re-enter and take possession of the previously transferred property.

On July 21, 1989, appellee (substituted trustee for Eq-uitable Federal Savings Bank) initiated foreclosure proceed-ings on the deed of trust to the Developer. Apparently, appellee was spurred into action by the fact that the City had entered into a contract with another developer and was preparing to transfer title to the subject property. When the City moved to intervene in the pending foreclosure action as a matter of right because it owned the subject property, the Circuit Court for Montgomery County granted the motion. The City then obtained an *ex parte* injunction against appellee, enjoining the scheduled foreclosure sale. The Developer, the defendant in the foreclosure action, did not file a response or enter an appearance in the case.

On December 28, 1989, after hearing oral argument, the court denied the City's request for a permanent injunction and declaratory relief, and dismissed the City's counter-

claim. Although the Developer mortgaged the property *after* the City had recorded its deed, the court held that the deed of trust was a valid lien because it was in place *before* the City exercised its right of re-entry. The court further held that when the City re-entered the property after the condition subsequent occurred, it took back the property subject to the deed of trust. Although the court refused to enjoin foreclosure of the property, it did stay the foreclosure proceeding pending appeal. On January 8, 1990, the City timely filed a motion to amend or alter judgment. After hearing oral argument on April 25, 1990, the court denied the motion. The City appeals to us from the court's orders of December 28, 1989 and April 25, 1990 and asks whether:

I. A mortgage given by a grantee of an estate in fee simple subject to a condition subsequent with an accompanying right of re-entry, attaches only to such grantee's interest, and does not encumber the rights of the grantor who re-acquires the property from the grantee when the condition subsequent occurs and the grantor exercises its right of re-entry.

II. A deed of trust that appellee placed on the property was a permissible encumbrance or lien under the Disposition Agreement that was enforceable against the City.

## I.

The City contends that when the grantee of an estate in fee simple subject to a condition subsequent gives a mortgage, the mortgage attaches only to the grantee's interest and not that of the grantor. Thus, the City reasons, a grantor who re-enters the property after the condition subsequent occurs takes it free of such an encumbrance.

Appellee, on the other hand, contends that the mortgage attaches to the estate itself and that the encumbrance is not divested when title revests in the grantor. Appellee would convince us that the mortgage remains attached to the estate because the grantee of a fee simple subject to a condition subsequent possesses the entire estate prior to the

occurrence of a condition subsequent, *i.e.*, the grantor retains no interest in the estate, only a remedial contractual right of re-entry. In support of this proposition, appellee contrasts the fee simple subject to a condition subsequent with that of the fee simple determinable in which the possibility of a reverter exists. Appellee argues that because of this possibility of a reverter, the grantor retains an "interest" in the estate—a reversion as it were. According to appellee's theory, a mortgage given by a grantee of a fee simple determinable presumably would not attach to the estate because the grantor retained an interest in the estate. By contrast, a mortgage given by a grantee of a fee simple subject to a condition subsequent *would* attach to the estate because the grantor retained no interest in the estate.

 An estate in fee simple subject to a condition subsequent with a power of termination (or right of re-entry) is an estate that is granted to another but which the grantor may again acquire for breach of the condition under which it was granted. *See generally* 28 Am.Jur.2d *Estates* § 139, 160 (1966). The estate does not end automatically when the breach of condition occurs but only when the grantor terminates the estate by re-entering the land. *Id.* A fee simple determinable with a right of reverter also is an estate that is granted to another and that may end on the occurrence of a particular event. *Id.* §§ 22, 24. It differs from the fee simple subject to a condition subsequent in that the determinable fee automatically ends when the event occurs without the need for any action by the grantor. *Id.*

 Although appellee would characterize the right of reverter as a "reversion," the term "reversion" actually designates the estate that *remains* in a grantor during the life of a particular estate—such as a life estate—that he or she has granted to another. *See* 28 Am.Jur.2d *Estates* § 171 at 299 (1966); 31 C.J.S. *Estates* § 105 at 202 (1964).

When the particular estate granted ends, possession of the estate reverts to the grantor.

■ The possibility of a reverter, by contrast, is the *mere possibility* that exists in the grantor, after granting a determinable fee to another, of having the land again if the granted estate ends. *See* 28 Am.Jur.2d *Estates* § 183 at 322 (1966); 31 C.J.S. *Estates* § 105 at 203–04 (1964). The Restatement of Property has characterized the possibility of reverter as "any reversionary interest which is subject to a condition precedent."[4] Restatement of Property § 154 (1936). It further explains that a "reversionary interest" is "any future interest left in a transferor or his successor in interest." Although this characterization suggests that "something" is left in the grantor after the grant of a determinable fee, *see* 28 Am.Jur.2d *Estates* § 183 at 322 (1966); 4A G.W. Thompson, *Real Property* § 1871 at 531 (1979) [hereinafter *Thompson* ], the grantor retains no right of seisin or possession—*all of the estate is in the grantee.* 28 Am.Jur.2d *Estates* § 183 at 323 (1966); 4A *Thompson* § 1978 at 380; 31 C.J.S. *Estates* § 105 at 205 (1964); *Collette v. Town of Charlotte*, 114 Vt. 357, 45 A.2d 203, 205 (1946) ("A fee upon condition resembles a determinable fee in that it exhausts the whole estate.")

The appellee raises a distinction without a difference. The Restatement of Property explains that the grantee (owner) of an estate in fee simple defeasible, which encompasses both fees simple determinable and fees simple subject to a condition subsequent, has the same power and privilege to create an interest in the affected land as that of one who owns an estate in fee simple absolute. *Restatement of Property* § 50 (1936). The Restatement goes on to note, however, that "all interests so created are subject to the defeasibility which existed as to the estate of the

---

**4.** The Restatement defines a reversion as "any reversionary interest which is *not* subject to a condition precedent." Restatement of Property § 154 (1936).

[grantee]." *Id.* Section 50 also provides the following illustrations:

1. A, owning Blackacre in fee simple absolute, transfers Blackacre "to B and his heirs, but upon the express condition that if Blackacre is built on, A may enter and terminate the estate hereby conveyed." B by quitclaim deed transfers "all my right, title and interest in Blackacre to C and his heirs." A's power of termination is effective as against C's interest in Blackacre.

2. A, owning Blackacre in fee simple absolute, transfers Blackacre "to B and his heirs so long as the Town of X remains unincorporated." B mortgages Blackacre "to C and his heirs" by an otherwise effective instrument. The Town of X is incorporated. B's interest and also C's interest in Blackacre terminate automatically.

■ The first illustration addresses the case of a fee simple subject to a condition subsequent with a power of termination (right of re-entry). The second addresses the case of a fee simple determinable with the possibility of reverter. Clearly, the second illustration indicates that the mortgagee's interest, *i.e.*, the interest given to the mortgagee by the grantee, ends *along with* the grantee's interest upon the occurrence of the stated event (when the Town of X incorporates) in the case of a fee simple determinable. We think that a mortgagee's interest similarly ends when a grantor exercises the power of termination in the case of a fee simple subject to a condition subsequent. That is, the second illustration applies equally well to a situation such as the one in this case in which the grantee's interest was subject to a power of termination rather than a possibility of a reverter. *See also* 28 Am.Jur.2d *Estates* § 161 at 286 (1966); Tiffany, *Real Property* § 152 at 142 & n. 81 (abridged ed. 1940); 26 C.J.S. *Deeds* § 150 (1956).

Although there are no recent cases on point, a number of older cases have held to this effect. In *Minneapolis Threshing Mach. Co. v. Hanson,* 101 Minn. 260, 112 N.W. 217 (1907), a grantor conveyed land to a grantee by a deed that contained a provision in which the grantee agreed to

pay the grantor $225 each year for as long as the grantor lived. *Id.* 112 N.W. at 217. The deed further provided that if the grantee failed to make the payments then the deed would become null and void. While the grantee was in possession of the land, he mortgaged it to the Minneapolis Threshing Machine Co. *Id.* 112 N.W. at 218. The grantee "surrendered possession of the land to [the grantor], who then re-entered for the purpose of revesting herself with her former estate therein." *Id.* In an action to foreclose on the mortgage, the lower court held that the condition as to future payment was a condition subsequent. As such, the company had no interest in the land and could not foreclose the mortgage against the grantor. *Id.*

On appeal, the appellate court found that the provision that "a failure to make the payments will make the deed null and void" had the same effect as if the parties had included a provision for re-entry and ruled that the trial court correctly had held that this was a condition subsequent. *Id.* Consequently, the grantor was entitled to possession of the land—free of the mortgage lien—when the grantee failed to make the payments due under the deed. *See also Sherill v. Sherill,* 211 Ala. 105, 99 So. 838 (1924); *First Nat'l Bank of New Brockton v. McIntosh,* 201 Ala. 649, 79 So. 121 (1918); *Moss v. Chappell,* 126 Ga. 196, 54 S.E. 968 (1906).

■ In this case, appellee took the mortgage with full knowledge that the deed contained the condition; it was not misled in any way as to that fact. Because appellee was bound by the same conditions that bound the Developer, the mortgage terminated when the City re-entered the property and title revested in it. Appellee is not entitled to relief on this basis.

## II.

■ The City contends that because the deed of trust which appellee placed on the property was not a permissible

encumbrance or lien under the Agreement, appellee cannot now enforce the deed of trust against the City.

In *Riggs Nat'l Bank v. Wines,* 59 Md.App. 219, 226, 474 A.2d 1360 (1984), we explained that "[a] deed of trust . . . is a contract, and its language is to be construed in accordance with the law of contracts. If the language is clear and unambiguous, its construction is a matter for judicial interpretation 'according to what reasonable persons in the position of the parties would have thought it meant.'" (citation omitted).

The Agreement between the City and the Developer reads as follows:

*ARTICLE VI—MORTGAGE FINANCING; RIGHTS OF MORTGAGE HOLDERS*

*Section 6.01. Limitation upon Encumbrance of Parcel.* Prior to the issuance of a Certificate of Completion for improvements on a Parcel conveyed to the Developer pursuant to Section 2.01 or 2.02 of this Agreement, the Developer shall not engage in any financing or any other transaction creating any mortgage or other encumbrance or lien upon such Parcel, *except* for the purpose of obtaining (i) *funds only to the extent necessary for making improvements on such Parcel and* (ii) *such additional funds, if any, in an amount not to exceed the purchase price,* if any, paid by the Developer to the City for the Parcel; provided that the Developer may obtain a commitment for financing in excess of the amount specified in clauses (i) and (ii) of this Section 6.01 if such additional funds are not advanced to the Developer prior to issuance of a Certificate of Completion for improvements on such Parcel and do not create any mortgage or other encumbrance or lien against such Parcel in excess of the amount specified in clauses (i) and (ii) of this Section 6.01 prior to the issuance of a Certificate of Completion for improvements on such Parcel. The Developer shall notify the City in advance of any financing, secured by mortgage or similar lien instrument, it proposes to enter into with respect to such

Parcel, and shall promptly notify the City of any encumbrance or lien that has been created on or attached to the Parcel, whether by voluntary act of the Developer, or otherwise, of which the Developer has notice.

(emphasis added).

Thus, the Agreement prohibited the Developer from placing a loan or encumbrance on the property before the Developer obtained a certificate of completion for improvements to the property, subject to two exceptions. The Agreement permitted the Developer (i) to obtain funds "only to the extent necessary for making improvements" to the property, and (ii) to obtain "such additional funds, if any, in an amount not to exceed the purchase price ..." that the Developer paid to the City for the property. The Agreement also required the Developer to notify the City before the Developer entered into any financing arrangements. Section 3.10, which established the City's power of termination (right of re-entry), further provided that the "revesting of title in the City shall always be subject to any rights or interests provided in Article VI of this Agreement for the protection of mortgage holders." Thus, if appellee complied with Article VI, the City's right in and to the property would be subordinate to that of the appellee.

The City argues that the loan was not one for improvements to the property because the Developer never actually began construction. The City further argues that the amount of the loan was in excess of the purchase price and therefore violated Section 6.01(ii). On these bases, it concludes that the loan was impermissible under the terms of the Agreement.

In *Riggs*, 59 Md.App. 219 at 227, 474 A.2d 1360, we explained that the purpose of a subordination clause such as the one in this case was to assure that a primary interest (here, the City's interest) in a property would not be adversely affected by subordination to a construction loan. The clause would protect the primary interest by compensating for any loss of position to the lender by virtue of the increased value of the land that resulted from the constru-

tion. *Id.* If the lender approved the use of the construction loan money for a purpose other than that contemplated by the subordination clause—such as improvements to some property other than that named in the deed of trust, *see id.* at 221–22, 227, 474 A.2d 1360—that action would frustrate the purpose of the clause because there would be no "equivalent compensation" for the primary interest's loss of position. *Id.* at 227, 474 A.2d 1360. By contrast, a subordination clause does not protect the primary interest from the possibility that the borrower (here, the Developer) unlawfully will divert the funds in violation of the conditions attached to the loan unless there also is an express provision that places a duty on the lender to oversee the borrower's use of the funds. *See Hyatt v. Maryland Federal Savings & Loan,* 42 Md.App. 623, 629–30, 402 A.2d 118 (1979).

In the hearing on the City's motion for a permanent injunction, the court did not address the question of whether the loan was authorized under the Agreement. The court subsequently discussed the issue during the motion for reconsideration hearing, but still reaffirmed its prior holding that the City's interest was subordinate to that of the appellee because the deed of trust had attached to the property before the City exercised its power of termination (right of re-entry).[5]

We think that the trial court discussed the question of whether the loan was authorized under the Agreement without sufficient evidence in the record for it to do so. Consequently, we remand for an evidentiary hearing to determine whether appellee complied with the provisions of Article VI when it loaned the Developer the $900,000. If appellee failed to comply with the provisions of Article VI, then appellee's interest will be subordinate to that of the City, *i.e.,* title will revest in the City. If, on the other hand, appellee complied with Article VI, but the Developer unlaw-

---

**5.** We already have explained why the trial court could not use this theory as the basis for its decision, *see supra* section I.

fully diverted the funds, then the City's interest in the property will be subordinate to that of the appellee.

Appellant's argument that Equitable's failure to notify the City of the deed of trust now precludes the bank from claiming priority under the Agreement must fail. The Agreement specifically states that "[t]he *Developer* shall notify the City...." Nowhere in the Agreement does it indicate that the lender also is obliged to notify the City and we have *no power to re-write the Agreement.* If the City required the lender to notify it as well as the Developer, then the City should have included a provision to that effect in the Agreement.

CASE REMANDED WITHOUT AFFIRMANCE OR RE-VERSAL FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.