COPE, Judge.
Mercantil Intercontinental, Inc., and Kristina Estates Land Corporation appeal a final judgment of foreclosure insofar as it determined that a mortgage held by Gener-albank was entitled to priority over Mercantile and Kristina’s mortgages on three lots in a subdivision. We reverse.
Mercantil held a purchase money first mortgage on various undeveloped lots in a new subdivision. The owner-mortgagor was the developer, Kelly Homes, Inc.[1] The developer sought a construction loan from Generalbank (“the construction lender”) in order to build single family homes in the subdivision.
In 1987 Mercantil, the developer, and the construction lender entered into an Agreement to Subordinate. The Agreement provided for the subordination of Mercantil’s mortgages to the construction lender’s mortgage on a phased basis. The Agreement recited that Mercantil had already executed four individual subordination agreements covering four lots in the subdivision. The Agreement provided that Mer-cantil would execute additional subordination agreements “two (2) lots at a time, after each two (2) lots previously subordinated as per the terms and conditions of said Purchase Money Mortgages have been either sold and the mortgage has been paid off, or the release price thereon has been paid.” Agreement to Subordinate, at 2. The contract also provided that the future individual subordination agreements would be “identical in form to those previously executed by Mortgagee [Mercantil] subordinating the lien of its mortgages to the lien of a loan for the construction of a single family residence, and for no other purpose, on each said lot_” Id. (emphasis added).
Thereafter the construction lender made the construction loan, and disbursed funds to the developer. Insofar as pertinent here, in 1989, pursuant to the Agreement to Subordinate, Mercantil executed two additional subordination agreements, one covering lot 24 and one covering lot 25. Each individual agreement provided that Mercan-til’s mortgage would be subordinate to the construction lender’s mortgage “covering the premises and securing a loan for the construction of a single family residence on said lot, and for no other purpose whatsoever_” Subordination Agreement, February 28, 1989, at 1 (emphasis added).
Meanwhile Mercantil had assigned its purchase money mortgage on lot 2 to Kristina Estates Land Corporation.[2] Kristina, as assignee, was bound by the Agreement to Subordinate. In 1988 Kristina executed an individual subordination agreement covering lot 2, which was identical to those quoted above.
The developer defaulted. The lenders brought foreclosure proceedings. Mercan-til and Kristina (“the purchase money lenders”) concede that the construction lender enjoys priority on the lots which were improved by virtue of the construction lien.
On lots 2, 24, and 25, however, no improvements were ever begun. The purchase money lenders dispute the construction lender’s priority on those lots. After hearing argument of counsel, the trial court ruled that the contracts at issue here were clear on their face, and that the construction lender, Generalbank, had priority. The purchase money lenders have appealed.
The purchase money lenders’ first argument is that the Agreement to Subordinate and related documents required construction lender Generalbank to make a separate construction loan on each separate lot. We disagree. After review of the Agreement to Subordinate, which in turn specified the form of the individual subordination agreements, it is clear that the parties contemplated the making of a single construction loan covering the various lots in the subdivision.[3]
*295 The purchase money lenders’ second point, however, has merit. At the time of foreclosure the construction lender had already disbursed construction funds which had been used elsewhere in the housing subdivision. It was undisputed at the final hearing that lots 2, 24, and 25 are unimproved.
In the present case the agreements provided that the construction loan proceeds would be used for a specific purpose, namely, the construction of a single family residence on lot 2, another on lot 24, and another on lot 25. No such construction ever took place. The construction funds which were disbursed by the construction lender, Generalbank, were used for construction purposes elsewhere in the subdivision, but did not result in the construction of improvements on lots 2, 24, and 25.
According to Professor Powell,
A subdivision developer commonly obtains a subordination agreement from the vendor of the undeveloped property who otherwise would have a superior position because of the purchase money priority rule. In order to obtain financing for the construction on the property, the developer will need to give a first priority position to the construction lender.... The vendor is usually willing to subordinate because he realizes that the repayment of the purchase loan depends on the successful development of the property. In addition, a second mortgage on improved land generally provides better security than a first mortgage on the land in its unimproved condition.
3 R. Powell, The Law of Real Property, para. 455.1[2], at 37-228 to 37-229 (1992).
However, “[b]ecause of their nature, ‘The law is well settled that rights of priority under an agreement of subordination extend to and are limited strictly by the express terms and conditions of the agreement. ...’” Miller v. Citizens Savings & Loan Association, 56 Cal.Rptr. 844, 850-51, 248 Cal.App.2d 655, 663 (1967) (citations omitted). Where the construction lender has not abided by the terms and conditions of the agreement, the subordinating mortgagee will be “granted reestablishment of the superiority of his lien over that part of the loan not used for authorized purposes.” G. Nelson & D. Whitman, Real Estate Finance Law § 12.9, at 908-09 (2d ed. 1985); accord 3 R. Powell, The Law of Real Property para. 455.1[2], at 37-230 to 37-231 (“The subordinating mortgagee is given relief only if the court is convinced that the subordination was conditioned on an express representation that the loan proceeds would be used exclusively for improvements on the property.”). The construction lender is in a position to “protect [itself] by supervising the [borrower’s] use of loan funds.” Comment, The Supreme Court of California 1966-1967, 55 Cal.L.Rev. 1059, 1187 (1967). See generally Riggs Nat’l Bank v. Wines, 59 Md.App. 219, 474 A.2d 1360, cert. denied, 301 Md. 43, 481 A.2d 802 (1984); First Funding Corp. v. Birge, 220 Va. 326, 257 S.E.2d 861 (1979); The Florida Bar, Florida Real Property Sales Transactions §§ 12.10-.11 (June 1982 Supp.); The Florida Bar, Florida Real Property Practice II, §§ 3.18-.19 (2d ed. 1975).
Here, the construction lender did not comply with the terms of the Agreement to Subordinate or the individual subordination agreements. The construction lender had disbursed funds which were used on other lots in the subdivision. The default occurred in close proximity to the execution of the subordination agreements on lots 2, *296 24, and 25. No disbursements were for the purpose of constructing single family residences on those lots, as required by the parties’ agreements. The effect of the trial court ruling was to give the construction lender the three lots as additional security for construction disbursements made for improvements elsewhere in the subdivision. This was impermissible under the terms of the parties’ contracts.
The judgment is reversed and the cause remanded with directions to enter judgment in favor of appellants with respect to lots 2, 24, and 25.

. Kelly Homes, Inc., was formerly known as Kristina Estates Developers, Inc.

. The assignment covered other lots as well, but only lot 2 is at issue here.

. The purchase money lenders’ argument stems from an obvious error in the parties’ Agreement to Subordinate, insofar as it specified that the individual subordination agreements would be *295 “identical in form to those previously executed by Mortgagee....” Agreement to Subordinate, at 2. The four pre-existing subordination agreements all referred to a construction loan and mortgage “to be executed hereafter by mortgagor [Kelly Homes, Inc.]_” Subordination Agreement, Feb. 28, 1989, at 1. The "hereafter" reference was appropriate for subordination agreements executed prior to the time that the. construction loan was made. The form should have been amended appropriately for subordination agreements entered after the date of the construction agreement.
However, a reading of the Agreement to Subordinate in its totality leaves no doubt that there was intended to be but a single construction loan covering the various lots in the subdivision. The individual subordination agreements at issue here will be interpreted accordingly.