# THE BUSINESS BANK, ET AL.

## v.

# CHARLES R. BEAVERS, ET AL.

Record No. 930527

April 15, 1994

Present: All the Justices

*William R. Marshall, Jr. (Manning, Davis & Kirby*, on briefs), for appellants.

*H. Clark Leming (Michael E. Levy; Leming, Healy and Levy*, on brief), for appellees Charles R. Beavers, Martha R. Beavers, David Allen Beavers, Janice Marlene Beavers, Randolph J. Butler and Bernadette T. Butler.

Nils G. Peterson, for appellee Frederick M. Lacey, Jr.

JUSTICE WHITING delivered the opinion of the Court.

In this dispute between lien creditors of real property, we decide whether purchase money deeds of trust have been subordinated to the lien of a deed of trust for an alleged bona fide land acquisition, development, and construction loan (ADC loan).

In 1988, three married couples owned separate but contiguous parcels of agricultural land in Stafford County: Charles R. and Martha R. Beavers owned 37.907914 acres; Randolph I. and Bernadette Butler, 35.82514 acres; and David A. and Janice M. Beavers, 10.88682 acres. In the early part of 1988, Frederick M. Lacey, Jr., a real estate developer, met several times with the six owners in an effort to acquire all three properties for residential development purposes.

In these meetings, Lacey and the six owners had general discussions about assembling the separate parcels as a common development. Lacey also told the owners that he "would be talking to a financial institution, with regard to funding on this [transaction]." Lacey's employees prepared three separate contracts of sale, each containing the following provisions:

> The balance of the Purchase Price [70% thereof] shall be represented by a Deferred Purchase Money Promissory Note . . . executed by the Purchaser . . . secured by a Deferred Purchase Money Deed of Trust . . . constituting a first lien on the Property [defined earlier as the specific tract to be conveyed by the particular couple]. *The above-mentioned First Deed of Trust and Note shall contain provisions requiring and directing the Noteholder to (i) subordinate the Deed of Trust to any bona fide*

*land acquisition/land development/construction loan(s)* . . .
made by a recognized institutional lender, without curtailment of
the Note and at no cost to Purchaser[.]

(Emphasis added.) Each contract also provided for survival of its pro-
visions following closing.

After the contracts were signed, Lacey furnished copies to The
Business Bank with his application for a $750,000 ADC loan on the
three properties. Lacey also told the bank that the sellers had agreed
to subordinate their proposed purchase money liens to the lien of an
ADC loan. Thereafter, the bank agreed to make the loan.

An employee in the law offices of Proffitt and Fox, P.C. prepared
(1) the deeds from each couple, (2) Lacey's purchase money notes,
and (3) Lacey's purchase money deeds of trust on each couple's prop-
erty. The purchase money deeds of trust included the following perti-
nent language:

> The lien of this Purchase Money Deed of Trust may be subor-
> dinated to any bona fide land acquisition/land development or
> construction loan or loans . . . without curtailment of the Note
> and at no cost to the Grantor.

The bank prepared its note, deed of trust, and other closing documents
and sent them to Steven Eric Bacon, President of American Realty
Title & Escrow, Inc. (American Realty), who was to handle the clos-
ing. The bank instructed Bacon to obtain the necessary title search
and a title insurance policy insuring the mortgagee's lien as a first
deed of trust.

No one from the bank appeared at the closing and the sellers were
unaware of the bank's loan. The sellers executed their deeds. Lacey
executed the sellers' purchase money notes and deeds of trust, as well
as the bank's note and deed of trust. Unknown to Lacey and the
sellers, Bacon had the documents recorded in the following order: (1)
the sellers' deeds to Lacey; (2) the bank's deed of trust from Lacey;
and (3) the purchase money deeds of trust from Lacey.

Upon closing, Bacon disbursed $263,238.48 of the bank's loan to
pay closing costs and Lacey's initial payments of 30% of the purchase
prices to the sellers. Thereafter, the bank withdrew or disbursed addi-
tional funds from an escrow account to pay Lacey's interest obliga-
tions on the bank's loan and to reimburse Lacey for sums he had paid
on his interest obligations secured by the purchase money deeds of
trust. These additional funds were also applied toward development

costs incurred for real estate taxes, rezoning, preliminary land planning, and development and feasibility studies on the properties.

Lacey failed to pay the bank's loan on its August 1991 due date, and the parties thereto did not agree on an extension. Thereafter, the bank declared the loan in default and directed the trustees to advertise the property for sale to satisfy the loan balance of approximately $620,000. On the day before the property was to be sold under the bank's lien, the sellers sued the bank, Sheri C. Van Vranken and Karen L. Lutz, the trustees under the bank's deed of trust (hereafter collectively the bank), American Realty, and Lacey. In their suit, the sellers sought a declaratory judgment that their purchase money deeds of trust were the first liens upon their respective properties.

After *ore tenus* hearings, the court concluded that "the subordination was not authorized in the manner it was ostensibly achieved. Accordingly, the subordination is void." The bank appeals.

The bank admits that "the contractually contemplated procedure [was] that the Beavers/Butlers deeds of trust be recorded in such a manner that they would initially and temporarily obtain a first lien priority." However, the bank contends that it achieved first lien status "by a different but lawfully effective procedure." We do not agree that the procedure was "lawfully effective"; rather, we hold that it was void *ab initio*.

■ The principles articulated in *First Funding Corp. v. Birge,* 220 Va. 326, 257 S.E.2d 861 (1979), control our decision in this case. In *Birge,* the seller of two noncontiguous lots held a purchase money deed of trust on each lot. The seller authorized the trustees to subordinate the lien of each purchase money deed of trust to the lien of a construction loan. However, we concluded that this authorization did not permit the trustees to subordinate the lien of each purchase money deed of trust to the lien of one construction loan deed of trust covering *both* lots. Because the trustees' power was limited in the purchase money deeds of trust and they could only act "in strict compliance with the trust document[s]," we concluded that the trustees' attempted subordination was void *ab initio*. Therefore, we affirmed the trial court's holding that the seller's purchase money deeds of trust were " 'first trusts on each of the respective lots.' " *Id.* at 331, 335, 257 S.E.2d at 864, 867.

■ In this case, the sellers' contract of sale informed the bank that the sellers, as "Noteholders," could be "require[d]" to subordinate their liens to the lien of an ADC loan. Clearly, such subordinations could only be accomplished by the noteholder. Because this did not

occur, Bacon's act did not create a first lien in the bank's favor on any of the sellers' properties.

Accordingly, the judgment of the trial court will be

*Affirmed.*