COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Ortiz and Lorish
Argued at Fredericksburg, Virginia


WINFRED P. HUDGINS, DDS

MEMORANDUM OPINION* BY
v.  Record No. 1667-23-4               JUDGE MARY GRACE O'BRIEN
                                        MARCH 25, 2025
JP MORGAN CHASE BANK, N.A.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

Barrett L. Kime (Manoil Kime, PLC, on briefs), for appellant.

Robert R. Michael (David L. Ward; BWW Law Group, LLC, on
brief), for appellee.


Winfred P. Hudgins appeals the decision of the circuit court granting a motion for

summary judgment filed by JP Morgan Chase Bank, N.A. ("Chase").  Because we find that the

court had jurisdiction to adjudicate the claim and properly granted summary judgment on that

issue, we affirm.

BACKGROUND

Hudgins is the former owner and current resident of real property located in Reston,

Virginia.  In September 2005, he executed a deed of trust securing a loan in the amount of $742,000

(the "First Mortgage") from MGC Mortgage, Inc. ("MGC") using the property as collateral.  In June

2006, Hudgins executed a credit line deed of trust securing a loan in the amount of $200,000 from

Chase, also using the property as collateral.  Hudgins defaulted on both mortgages during the

COVID-19 pandemic.  MGC initiated foreclosure proceedings under the First Mortgage and

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

scheduled a foreclosure sale for September 2, 2022.[1]  Chase scheduled a foreclosure sale of its own

for August 31, 2022.[2]  Hudgins submitted loss mitigation packages to both MGC and Chase in an

effort to halt the foreclosures.  Chase canceled its foreclosure sale when Hudgins entered its loss

mitigation process, but for reasons not disclosed in the record, MGC proceeded with its foreclosure

sale as scheduled.  To protect its subordinate interest in the property as security for the Second

Mortgage, Chase attended MGC's foreclosure sale, was the high bidder, and purchased the

property.

After the foreclosure sale, Chase filed a summons for unlawful detainer in general district

court.  Hudgins moved to dismiss for lack of subject matter jurisdiction, alleging the existence of a

bona fide dispute over title to the property under *Parrish v. Federal National Mortgage Association*,

292 Va. 44 (2016).  In his motion, Hudgins challenged the validity of Chase's title with allegations

of common-law fraud, "dual tracking"[3] in violation of 12 C.F.R. § 1024.41(g); and inequitable

conduct.  Hudgins claimed he was entitled to a declaratory judgment that Chase's title was invalid

and a "constructive trust" to prevent Chase from "retain[ing] the benefit of its ill-gotten title."  In a

supplementary motion to dismiss, Hudgins added that he had a counterclaim against Chase to quiet

title.

---

[1] The foreclosure sale was arranged by substitute trustee Commonwealth Trustees.  For simplicity, we refer to MGC Mortgage, Inc., and all of its agents and assigns collectively as "MGC."

[2] Chase's substitute trustee, Equity Trustees, LLC, arranged this foreclosure sale.  For simplicity, we refer to appellee JP Morgan Chase Bank, N.A. and all of its agents and assigns as "Chase."

[3] "Dual tracking occurs when [a] servicer moves forward with foreclosure while simultaneously working with the borrower to avoid foreclosure." *McAdams v. Robinson*, 26 F.4th 149, 154 (4th Cir. 2022) (alteration in original) (quoting *Wilkins v. Wells Fargo Bank, N.A.*, 320 F.R.D. 125, 129 n.1 (E.D. Va. 2017)); *see also Sharma v. Rushmore Loan Mgmt. Servs., LLC*, 611 F. Supp. 3d 63, 82 (D. Md. 2020).

In his motion to dismiss, Hudgins alleged that Chase intentionally deceived him by "represent[ing] that there would be no foreclosure while the loan[-modification] application with [Chase] was pending." Additionally, according to Hudgins, Chase violated 12 C.F.R. § 1024.41(g) by purchasing the property at the First Mortgage foreclosure sale while his loan-modification application was pending. He further accused Chase of engaging in an "unconscionable scheme" to acquire title at MGC's foreclosure sale and later attempting to "conceal" the purchase.

In an affidavit attached to his motion to dismiss, Hudgins alleged that after defaulting on the mortgages, he contacted both MGC and Chase to discuss his delinquency. He subsequently submitted loan-modification applications to both banks. Upon receiving foreclosure notices from the banks, the affidavit states, Hudgins "contacted each of them by telephone," and both informed him that "[he] was in a loan[-]modification process with each of them and [his] home was not subject to foreclosure." According to the affidavit, he later learned that Chase canceled its foreclosure sale "due to the pending modification process," but had purchased the property at the foreclosure sale. The affidavit offers no information about why MGC continued with the foreclosure sale after Hudgins applied for a loan modification. But the affidavit asserts that MGC's foreclosure and Chase's purchase of the property "violate[d] assurances that [he] received from loan servicing representatives" for both mortgages "that there would be no foreclosure while loan[-]modification applications were pending." Hudgins also claimed that he had sufficient funds on hand to reinstate both loans, but he did not do so because he relied on the assurances of MGC and Chase that they would not proceed with foreclosure.

The general district court granted Hudgins's motion to dismiss. In Chase's de novo appeal to circuit court, both parties declared their intent to renew and rely on their pleadings filed in general district court. *See Parrish*, 292 Va. at 47, 54 ("[A]lthough de novo, an appeal in the circuit court is a continuation of the original case."); *see also Stacy v. Mullins*, 185 Va. 837 (1946). Chase then

- 3 -

moved for summary judgment. In his opposition, Hudgins asserted that because a bona fide question of title to the property existed in the general district court, and by extension the circuit court on appeal, both courts lacked jurisdiction to hear the case; again, he based his jurisdictional challenge on allegations of common-law fraud, dual tracking, and inequitable conduct by Chase.

At the summary judgment hearing, the arguments focused on equitable considerations. Hudgins emphasized that both Chase and MGC had represented to him that "he would not be subject to foreclosure while his loss mitigation applications were pending." While conceding that neither Chase nor MGC could bind the other by its separate representations, Hudgins argued the court could nevertheless consider MGC's conduct in determining whether he had sufficiently alleged an equitable basis for challenging Chase's title. He argued that instead of merely promising not to foreclose itself, Chase "represented" to him "what were the facts under the federal regulations," that he was not subject to foreclosure, and that no foreclosure would occur. However, when the court asked about the implication of this argument—that is, whether MGC's alleged violations could be "held against Chase"—Hudgins pivoted to an argument about Chase's own conduct: he asserted it was inequitable for Chase to "choos[e] to be part of a foreclosure" and could have "reinstat[ed] the [F]irst [M]ortgage loan and charg[ed] the cost to" Hudgins. Hudgins maintained that although Chase had no duty to reinstate the First Mortgage loan, its decision not to pursue this option was an equitable consideration in Hudgins's favor. Having "chose[n] the foreclosure route," he argued, Chase "now bears the risk of an equitable claim from the borrower."

The court found that Hudgins had not raised a bona fide question of title and concluded that it had jurisdiction to hear the case. "The facts, as [the court] underst[ood] them," were that "Chase said[] [it] would not foreclose on [its] loan [and] Chase did not foreclose on [its] loan." If "Hudgins misunderstood that or thought somehow that that absolved him from any risk of foreclosure, he was unreasonably mistaken in that regard," the court found. Nor was there any "evidence and no

- 4 -

allegation . . . that Chase was in collusion or somehow was aware of any bad action by MGC." The court ruled that "there's nothing to suggest[,] even looking at it from a demurrer standpoint[,] that Chase was anything but a good faith purchaser for value." The court granted Chase's motion for summary judgment.

ANALYSIS

On appeal, Hudgins asserts a single assignment of error: that "[t]he trial court erred in granting summary judgment to [Chase], in that the trial court lacked subject matter jurisdiction to proceed in the case under *Parrish*[.]"

In *Parrish*, the Supreme Court of Virginia held that in unlawful detainer actions filed in general district court, where a homeowner raises allegations that create a bona fide question of title, the general district court is divested of subject matter jurisdiction and must dismiss the case without prejudice. 292 Va. at 51-52, 54. A circuit court hearing the appeal must likewise dismiss the matter, the Court concluded, because "when exercising its de novo appellate jurisdiction, the circuit court has no more subject matter jurisdiction than the general district court had in that court's original proceeding." *Id.* at 49.

Not just "any naked allegation" of invalidity, however, "will put the deed in doubt, thereby divesting the [court] of jurisdiction. The question of title raised by the homeowner's allegations must be legitimate." *Id.* at 52. To divest the general district court of jurisdiction—and by extension the circuit court on appeal—"the allegations must be sufficient to survive a demurrer had the homeowner filed a complaint in circuit court seeking such relief." *Id.*

The homeowners in *Parrish* sufficiently raised a bona fide question of title. In that case, Brian and Teresa Parrish had mortgaged certain real property by deed of trust. *Id.* at 48. The deed of trust was subsequently conveyed to the Federal National Mortgage Association ("Fannie Mae"), which sent the Parrishes a notice to vacate and filed a summons for unlawful detainer in general

district court. *Id.* The Parrishes countered that they had timely submitted a completed loss mitigation application under 12 C.F.R. § 1024.41(g), which "prohibits a foreclosure sale after a homeowner submits a complete loss mitigation application under certain circumstances." *Id.* at 48, 54. They further alleged that "none of the exceptions provided in the regulation (which would have permitted Fannie Mae and its agent to proceed to foreclosure notwithstanding the application) applied." *Id.* at 54.

The Court found it reasonable to infer that "Fannie Mae[] was aware of the alleged violation of the deed of trust because it was [*both*] the lender that allegedly committed the violation" *and* the "foreclosure purchaser." *Id.* (emphasis added). These allegations, if proven, "could satisfy a court of equity to set aside the foreclosure." *Id.* Thus, the Parrishes raised a bona fide question of title in the unlawful detainer proceeding, thereby divesting the general district court—and the circuit court by extension— of subject matter jurisdiction. *Id.*

Hudgins's allegations here did not meet that standard. As in *Parrish*, Hudgins rests his challenge to the circuit court's jurisdiction, as derived from that of the district court that originally heard the case, on an allegation of "dual tracking"—that is, a lender proceeding with foreclosure while loan-modification proceedings are ongoing—prohibited by 12 C.F.R. § 1024.41(g). But Hudgins's allegations are distinguishable from those in *Parrish*. In that case, Fannie Mae alone was alleged to have engaged in dual tracking: Fannie Mae foreclosed on the Parrishes' property while the parties were in the loss mitigation process, and Fannie Mae was both the foreclosing lender and the purchaser at the foreclosure sale. *Id.* Here, Chase was not dual tracking as, by Hudgins's own concession, Chase canceled its own foreclosure sale after he initiated the loss mitigation process.

Nevertheless, Hudgins asserts that he raised a bona fide question of title with allegations of fraud. Defendants who raise a claim of fraud to invalidate a plaintiff's deed in an unlawful detainer action in the general district court must do so with sufficient specificity such that their allegations

would "survive a demurrer had the homeowner filed a complaint in circuit court." *Id.* at 52. Thus, allegations of fraud are held to a higher pleading standard than other types of claims. *See Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 385 (1997) ("Generalized, nonspecific allegations . . . are insufficient to state a valid claim of fraud."); *Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 858 (1978) (requiring that allegations of fraud not be "too vague, indefinite, [or] conclusory"). If fraud is not sufficiently pled, no bona fide dispute over title exists, and the general district court may properly try the issue of possession in the unlawful detainer action. *Parrish*, 292 Va. at 53.

According to Hudgins, Chase's acknowledgement that the property was not subject to foreclosure while in the loss mitigation process was a misrepresentation sufficient to sustain his fraud claim. But Hudgins is bound by his own pleadings. On Chase's appeal to circuit court, Hudgins expressly renewed and relied on his pleadings from the general district court. One of those pleadings—his motion to dismiss—attached his affidavit concerning the foreclosure. The facts in the affidavit are thus part of his pleadings. *See Cal. Condo. Ass'n v. Peterson*, 301 Va. 14, 22 (2022) ("Under Rule 1:4(i), a pleader's 'mention in a pleading of an accompanying exhibit, of itself and without more, makes such exhibit a part of the pleading.'"). As he stated in the affidavit, Hudgins "contacted [MGC and Chase] by telephone regarding the foreclosure notices that [he] had received. Representatives of [MGC] and [Chase] stated that [he] was in a loan[-]modification process with each of them and [his] home was not subject to foreclosure." Later in the affidavit Hudgins recast these communications as having given him "assurances" that "there would be no foreclosure while loan[-]modification applications were pending."

In his motion to dismiss, Hudgins tried to magnify these statements into a fraud claim. He alleged that Chase intended for him to rely on its promise "that there would be no foreclosure" while at the same time intending that a foreclosure—presumably, by MGC—would "actually go forward." Even assuming the Chase representative did intend to communicate not only that Chase

would refrain from foreclosures but also that MGC would too, Hudgins pled no facts tending to show that in making such statement, Chase actually believed—or even suspected—that in reality MGC would proceed with foreclosure. That Chase participated in the subsequent foreclosure sale in no way shows that Chase believed all along that such a sale would happen. Moreover, as the general district court noted, nothing in the record demonstrated any collaboration or collusion between Chase and MGC. Hudgins's position—that MGC's actions made Chase's representations fraudulent— would, in effect, make Chase Hudgins's insurer against any breach of those regulations by MGC, over whom it had no control.[4]

Therefore, Hudgins's allegations of fraud failed to raise a bona fide question of title. They "lack the specificity required to make out a case of fraud," including "[t]he identities of the agents, officers, and employees of [Chase] who are alleged to have perpetrated the fraud." *Tuscarora, Inc.*, 218 Va. at 858. "The allegations are too vague, indefinite, and conclusory to state a cause of action." *Id.*

Hudgins next argues he raised a bona fide question of title based on his equitable claim for a constructive trust. "A constructive trust arises not only when there has been actual fraud, but

---

[4] The facts of this case stand in clear contrast to those in our recent decision in *Neal v. Secretary of the Department of Veterans Affairs*, 79 Va. App. 1 (2023), where we ruled in favor of the homeowner resisting eviction following a foreclosure. In *Neal*, the homeowner became delinquent on a mortgage from Wells Fargo Bank, secured by a deed of trust in the residence guaranteed by the Veterans Administration (VA). *Id.* at 4. The deed of trust was subject to a "rider" requiring "compliance wi[th] all VA regulations in effect at the time of the execution of the deed of trust." *Id.* Neal obtained a loan modification, but later defaulted on it. *Id.* The substitute trustee initiated a foreclosure sale, from which the VA emerged as the highest bidder. *Id.* Neal resisted the subsequent unlawful detainer action on the ground that when she received her loan modification, a VA representative told her that she "no longer had a 'VA loan' that required compliance with the VA regulations." *Id.* Neal asserted that, had she known that she did in fact still have a VA loan, she "would have availed herself of certain protections contained in the VA regulations and guaranteed to her in her deed of trust." *Id.* Unlike the present case, the homeowner in *Neal* alleged a clear and palpable misrepresentation, by the VA who was a party to the suit and purchaser at the foreclosure sale and uttered by an employee agent of the VA over whom the agency had direct control. *See id.*

whenever one holding title to property 'is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.'" *Leonard v. Counts*, 221 Va. 582, 590 (1980) (quoting A. Scott, *The Law of Trusts* § 462 (3d ed. 1967)). Constructive trusts "occur not only where property has been acquired by fraud or improper means, but also where it has been fairly and properly acquired, but it is contrary to the principles of equity that it should be retained, at least for the acquirer's own benefit." *Id.* at 589 (quoting 1 Frederick D.G. Ribble, *Minor on Real Property* § 462 (2d ed. 1928)).

To raise a bona fide question of title, Hudgins was required to present allegations for a constructive trust that would be sufficient to survive a demurrer. *See Parrish*, 292 Va. at 52. He failed to do so. In his affidavit, Hudgins stated that he relied on Chase's representation that "there would be no foreclosure while the loan application with [Chase] was pending." On appeal, he asks this Court to infer an "unconscionable scheme" whereby Chase "substituted the [MGC] foreclosure for its own foreclosure" and "gain[ed] title by foreclosure contrary to its representations." Hudgins suggests that, even if these inferences fail to show actual fraud, they nevertheless reflect unjust conduct by Chase and should preclude Chase from retaining the benefit of title to the property. But these inferences have no basis in fact and fail to support any viable cause of action for either fraud or the imposition of a constructive trust. As discussed above, Hudgins pled no facts tending to show that Chase knew or even suspected that MGC would proceed with foreclosure; nothing in the record showed collaboration or collusion between the banks.

Hudgins contends that it was inequitable for Chase to acquire the property knowing that MGC's foreclosure sale violated federal regulations against dual tracking. However, violation of the dual-tracking regulation does not create a title defect. *See* 12 U.S.C. § 2605(f) (providing a money-damages remedy for dual-tracking violations); *see also* Code § 55.1-407. Accordingly,

Hudgins's equitable claims failed to raise a bona fide question of title that would deprive the lower courts of jurisdiction over the unlawful detainer action.[5]

CONCLUSION

Because Hudgins failed to raise a bona fide question of title under *Parrish*, we affirm the circuit court's exercise of jurisdiction over the unlawful detainer appeal from general district court.

*Affirmed.*

---

[5] Because Hudgins assigned error only to the circuit court's decision to grant summary judgment on the ground that it did not have jurisdiction to hear the case, we need not reach any other arguments that Hudgins raises.